(January 28, 1904.)

## SMITH v. KRALL.

[75 Pac. 263.]

CONTRACT TO CONVEY REAL ESTATE—WHEN MAY BE ENFORCED—JUDG-
MENT MODIFIED.—Where K. enters into a written contract to con-
vey certain real estate to S. on the payment of certain promissory
notes, and the contract provides that the failure of B. to com-
ply with the terms of the contract forfeits all rights he may have

by virtue thereof, and he does so fail to meet the payments after repeated demands for payment, a court of equity will not declare a specific performance on his showing that A. had also violated the contract. Under the facts of this case, *held,* that neither party has complied with the terms of the contract sued on, and a court of equity will place the parties as nearly *in statu quo* as possible.
(Syllabus by the court.)

APPEAL from the District Court of Ada County. Honorable George H. Stewart, Judge.

Judgment for the defendant from which plaintiff appeals. Judgment modified; each party to pay his own costs.

Richards & Haga, for Appellant.

Where, under a mutual bilateral contract for the purchase and sale of real estate, the vendee pays part of the purchase money in cash and gives his negotiable promissory notes for the balance, and the vendor retains the legal title to such real estate as security for the payment of such notes, the notes and contracts will be considered as one instrument, and regarded as a security in the nature of a mortgage. (*Wright v. Trautman,* 81 Ill. 374; *Smith v. Robinson,* 13 Ark. 533; *Graham v. McCampbell,* 19 Tenn. (Meigs) 52, 33 Am. Dec. 126; *Cleveland v. Martin,* 39 Tenn. 128; *White v. Land Co.,* 49 Mo. App. 463; *Blair v. Marsh,* 8 Iowa, 144; *Cotterell v. Long,* 20 Ohio, 464; *Conner v. Banks,* 18 Ala. 42, 52 Am. Dec. 209; *Button v. Schroyer,* 5 Wis. 598; 2 Warville on Vendors, 2d ed., secs. 712, 713; *Mullins v. Bloomer,* 11 Iowa, 361.) Under such a contract the vendor cannot arbitrarily and without notice repossess himself of the equitable title by declaring the interest of the vendee forfeited. The interest of the vendee must be foreclosed through judicial sale. (*Brown v. Bryan,* 6 Idaho, 1, 51 Pac. 995; *Security Sav. Co. v. Mackinzie,* 33 Or. 209, 52 Pac. 1046; *Wollenberg v. Rose,* 41 Or. 314, 68 Pac. 804, and cases cited *supra* under this subdivision.) Where a contract for the purchase and sale of real estate provides that if the vendee fails to make certain payments at the time such payments become due, the vendor shall be released from all obligation in law or equity to convey such property, and the vendee shall forfeit all right

thereto and all payments made thereon, and the vendor recognizes the contract as valid and binding after default has been made, and leads the vendee to believe that such contract continues in full force and effect, and the vendee, relying upon such belief, continues to expend money upon the property for taxes and other purposes, the vendor cannot declare a forfeiture of the vendee's interest in such property and of the payment made thereon, without first giving the vendee reasonable notice of such intention, especially where the default is caused by a *bona fide* controversy between the parties over the amount due the vendor by reason of certain damages claimed to have been sustained by the vendee from the failure of the vendor to perform his part of such contract.    (*Harris v. Troup,* 8 Paige (N. Y.), 422; Pomeroy's Specific Performance of Contracts, secs. 381, 395-397, 419; *Grigg v. Landis,* 21 N. J. Eq. 508; *Mathews v. Gilliss,* 1 Iowa, 242, 254; *Hatton v. Johnson,* 83 Pa. St. 219; *Forsyth v. North Amer. Oil Co.,* 53 Pa. St. 168; *Steele v. Branch,* 40 Cal. 3; *Carney v. Newberry,* 24 Ill. 203; *Mullins v. Bloomer,* 11 Iowa, 361; *Farley v. Vaughn,* 11 Cal. 227.) A stipulation or agreement contained in a mutual bilateral contract for the purchase and sale of real estate, to the effect that if the vendee fails to pay certain negotiable promissory notes given for the balance of the purchase price on the day such notes become due, or if the vendee fails to pay the interest on such notes, or either of them, semi-annually as the same becomes due, or fails to pay the state, city, school or county taxes, or any of such taxes, or any other assessments which are or may become due on the premises purchased, the vendor shall be released from all obligations in law or equity to convey such property, and the vendee shall forfeit all right thereto and all interest therein, and all payments made thereon will be construed as a penalty to enforce the prompt payment of such notes, interest, taxes and assessments.    (*O'Keefe v. Dyer,* 20 Mont. 477, 52 Pac. 196; *Bearden v. Smith,* 11 Rich. (S. C.). 554; 1 Sutherland on Damages, sec. 286; *Brennan v. Clarke,* 29 Neb. 385, 45 N. W. 472; *Krutz v. Robbins,* 12 Wash. 7, 50 Am. St. Rep. 871, 40 Pac. 415, 28 L. R. A. 676; *Wilhelm v. Eaves,* 21 Or. 194, 27 Pac. 1053, 14 L. R. A. 297;

*Condon v. Kempner,* 47 Kan. 126, 27 Pac. 829, 13 L. R. A. 671; *Laurea v. Bernauer,* 33 Hun, 307; *McIntosh v. Johnson,* 8 Utah, 359, 31 Pac. 450; *Steele v. Branch,* 40 Cal. 3; *Tayloe v. Sandiford,* 7 Wheat. (U. S.) 13, 5 L. ed. 384; *Land Co. v. Barton,* 51 Kan. 554, 33 Pac. 317; *Caldwell v. Lawrence,* 38 N. Y. 71; *Eva v. McMahon,* 77 Cal. 467, 19 Pac. 872; *Scofield v. Tompkins,* 95 Ill. 190, 35 Am. Rep. 160; *Heatwole v. Gorrell,* 35 Kan. ·692, 12 Pac. 135; *Wallis v. Carpenter,* 13 Allen (Mass.), 19, 25; *Gay Mfg. Co. v. Camp,* 65 Fed. 795, 13 C. C. A. 137; *Kelley v. Fejervary,* 111 Iowa, 693, 83 N. W. 791; *Fitzpatrick v. Cottingham,* 14 Wis. 219; *Shields v. McNitt,* 9 Paige (N. Y.), 101; *Amanda etc. Co. v. People's M. Co.,* 28 Colo. 251, 64 Pac. 218; *Johnson v. Cook,* 24 Wash. 474, 64 Pac. 729; 1 Pomeroy's Equity Jurisprudence, secs. 380, 381.) A party who insists on rescission must be himself without fault, for no one will be permitted to take advantage of his own wrong to put an end to an agreement into which he has entered. (24 Am. & Eng. Ency. of Law, 2d ed., p. 647, and cases there cited; 2 Warvelle on Vendors, 2d ed., secs. 867, 869; Pomeroy's Specific Performance of Contracts, secs. 337, 381; Waterman on Specific Performance of Contracts, sec. 436; *Thomas v. McCue,* 19 Wash. 287, 53 Pac. 161; *State v. McCauley,* 15 Cal. 429; *Snyder v. Spaulding,* 57 Ill. 480; *Wallace v. McLaughlin,* 57 Ill. 53; *Hatton v. Johnson,* 83 Pa. St. 219; *Converse v. Blumich,* 14 Mich. 109, 90 Am. Dec. 230; *Greggs v. English,* 38 Tex. 139, 148; *Scarborough v. Arrant,* 25 Tex. 134; *Powell v. Higley,* 90 Ala. 103, 7 South. 440; *Potter v. Tuttle,* 22 Conn. 512.) A party to a contract who has himself defaulted in his covenants cannot rescind without restoring every advantage received under the contract. He must place the other party *in statu quo.* He cannot take advantage of a delay which he himself has caused. (24 Am. & Eng. Ency. of Law, pp. 645, 646, and cases there cited; 2 Warvelle on Vendors, 2d ed., secs. 814, 864; Pomeroy's Specific Performance of ·Contracts, secs. 393, 405, and cases there cited; *Snyder v. Spaulding,* 57 Ill. 480; *Fountain v. Semi-Tropic L. & W. Co.,* 99 Cal. 677, 39 Pac. 497; *Thomas v. McCue,* 19 Wash. 287, 53 Pac. 161; *Bowman v. Ayres,* 2 Idaho, 465, 21 Pac. 405; *Greggs*

*v. English,* 38 Tex. 139, 148; 2 Hill on Vendors, 71 *et seq.;*
*Miller v. Steen,* 30 Cal. 403, 408, 89 Am. Dec. 124; *Morrison*
*v. Lods,* 39 Cal. 381.)

Wood & Wilson, for Respondent Krall.

W. E. Boarah, for Respondent Gwinn.

This is simply an action for specific performance of a cer-
tain contract. The only question involved is whether or not
the plaintiff is entitled to the relief he asks for. Does he stand
in such a position himself, in view of his default, as to demand
a performance of his agreement? Has he complied with the
terms of his contract? If not, he certainly cannot have specific
performance under any of the authorities. In other words,
he must abide by the terms of the contract as he made it. The
court can only enforce it according to its terms. The court will
not make a different contract or interpolate terms and condi-
tions not found in the contract, as counsel in their argument
seem to do. "Equity only enforces performance of a contract
as it is made by the parties themselves. It has no power to
make a contract for them." (*Magee v. McManus,* 70 Cal. 553,
12 Pac. 451; *Martin v. Morgan,* 87 Cal. 203, 22 Am. St. Rep.
240, 25 Pac. 350; *Rison v. Newbury,* 90 Va. 513, 18 S. E. 916;
*Hunt v. Rousanier,* 1 Pet. 14, 26 L. ed. 33.) It is conceded on
all hands that parties have the right to make their contract as
stringent as they please, and to make time of the essence there-
of. If one party without the consent of the other allows the
specific time to pass, no matter from what cause, without per-
forming the condition, the stipulated consequences must fol-
low. The contract is that if payment should not be made
at the stipulated time, then the purchaser's interest should
cease. (*Chrisman v. Miller,* 21 Ill. 227; *Phelps v. Illinois*
*Cent. R. Co.,* 63 Ill. 469; *Grey v. Tubbs,* 43 Cal. 359; *Settle v.*
*Winters,* 2 Idaho, 215, 10 Pac. 216; *Hipwell v. Knight,* 1
Younge & C. 401-416). This is purely and strictly a contract for
the sale of land, not the loaning of money or the mere security
of money loaned. (*Missouri River Co. v. Brickley,* 21 Kan. 275;
*Jennison v. Leonard,* 21 Wall. 302, 22 L. ed. 539; *Taylor v.*

*Longworth,* 14 Pet. 172, 10 L. ed. 405.) It is not necessary to have any specific language in a contract to show that time is the essence of the contract, but if it clearly appears from the language used that it was the intention of the parties to make it such, it will be so interpreted. (*Kimball v. Tooke,* 70 Ill. 553; *Benedict v. Lynch,* 1 Johns Ch. 370; *Cleary v. Folger,* 84 Cal. 316, 18 Am. St. Rep. 187, 24 Pac. 280; *Missouri River Co. v.* Brickley, 21 Kan. 275.) According to the agreement, the equitable interest terminated upon his failure to pay, and Krall stood in the same relation at the time he sold to Gwinn as if the contract with Smith had never been made. (*Jennison v. Leonard,* 21 Wall. 302, 22 L. ed. 539; *Martin v. Morgan,* 87 Cal. 203, 22 Am. St. Rep. 240, 25 Pac. 350.) Krall is not asking for a rescission of any contract. He is seeking no relief whatever from the court. He simply says Smith has forfeited his contract and is himself not entitled to any relief at equity. Now, Krall might not be entitled to any relief at equity if he were here asking for a rescission, but he is not asking for a rescission, and it is not necessary for him to do so because this contract terminated its own existence by its own terms. (*Stratton v. California L. Co.,* 86 Cal. 353, 24 Pac. 1068.)

STOCKSLAGER, J.—It appears from the record that on the twenty-ninth day of March, 1900, appellant entered into an oral agreement to purchase two lots in Boise from defendant Krall, for the sum of $850. Negotiations were made through W. S. Walker, agent for Krall. Appellant at said time paid to said defendant through his agent, Walker, $20. On the second day of April following a formal written agreement was prepared and signed, and on the same day, before any further money was paid, an additional agreement was executed and on April 3d following the execution of both agreements, appellant paid to defendant Krall the further sum of $130, and gave his two promissory notes of $350 each for the balance of the purchase money due in one and two years, respectively, and bearing interest at eight per cent per annum. The first agreement after stating the necessary facts of purchase and sale has the following clause:

"And the said party of the second part agrees to pay all state, city and school and county taxes, or assessments of whatsoever nature, which are or may become due on the premises above described.

"In the event of failure to comply with the terms hereof by the said party of the second part, the said party of the first part shall be released from all obligation in law or equity to convey said property, and the said party of the second part shall forfeit all right thereto, and all payments made on said property. And the said party of the first part on receiving the payments hereinbefore specified, at the time and in the manner above mentioned, agrees to execute and deliver to the said party of the second part, or to his assigns, a good and sufficient warranty deed to said premises, free from all encumbrances, and it is understood that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators and assigns of the respective parties."

The second contract is as follows: "On or before four months after this agreement, John Krall, party of the first part, agrees to remove from lots No. 1 and 2 in block No. 1 of Krall's addition, the buildings thereon. O. W. Smith, party of the second part, agrees to build on lots No. 3 and 4 in same block and addition, a residence that will cost not less than $2,000. The removal of said buildings herein stated is a part of the consideration for the purchase of lots No. 3 and 4 in the said block No. 1 from John Krall." These agreements were acknowledged.

The eleventh paragraph of the complaint is that the said defendant Krall refused and neglected to remove the said apple buildings from the said lots, and did not remove the same until sometime in the month of July, 1901, by reason of which the plaintiff was prevented from constructing the said house upon the said lots as required by the terms of the said contract.

The twelfth paragraph alleges that by reason of defendant John Krall's failure to carry out his said agreement, and by reason of his failure to remove the said apple-house, outhouses, barns, etc., from the lots purchased by this plaintiff, and from the lots numbered 1 and 2 of said block 1 until July, 1901, in,

violation of his said agreement as above set forth, this plaintiff
was damaged in various and large sums of money, to wit: By
increase in cost of building material between August 2, 1900,
and July, 1901, $700; by extra cost incurred in moving plain-
tiff's barn, $150; by loss of use of said lots 3 and 4, block 1,
$300.

The thirteenth paragraph alleges, among other things, that on
or about the tenth day of August, 1901, defendant Krall called
upon plaintiff for the payment of the first note, whereupon
plaintiff offered to pay said defendant both of the notes, to-
gether with the interest thereon, except the interest on the first
note from the termination of the said four months, for the
reason that the plaintiff had been deprived of the use of said
lots in the construction and operation of said building thereon,
and being injured and damaged as above set forth by reason of
the breach of said contract on the part of said defendant, where-
upon said defendant notified plaintiff that he would not ac-
cept any money upon said notes or either of them except the
principal on both notes together with the interest from date to
said tenth day of August, 1901.

The fourteenth paragraph states that plaintiff is informed
and believes, etc., "and therefore alleges the fact to be, that on
the tenth day of August, 1901, defendant Krall was not finan-
cially able to respond in damages to this plaintiff for the in-
jury sustained . . . . and that a judgment against said Krall
for the damages sustained would have been uncollectable and
worthless, and this plaintiff ever since the offer aforesaid has
at all times been ready and willing to pay defendant Krall the
total amount due under the contract in gold coin aforesaid,
less the interest due on the first note from the termination of
said four months, and has always been, and now is, ready and
willing to receive a conveyance of said premises and pay de-
fendant Krall the amount due under the contract, less the
damages sustained by this plaintiff by reason of the failure of
said defendant Krall to carry out his said agreement under the
terms of his said contract." By amendment permitted by the
court following this paragraph, plaintiff says: "And on or
about the fourth day of August, 1902, this plaintiff tendered to

the defendant, John Krall, the full amount due on said notes, and each of them, including interest thereon at the rate provided for from the date of said notes to the day of such tender, but that said Krall declined and refused to execute a deed, and still so refuses etc."

The seventeenth paragraph alleges that Della Gwinn, wife of Montie B. Gwinn, claims to have purchased these lots on or about the twenty-second day of April, 1902, from defendant Krall. Defendant Krall, answering for himself, admits the first and second paragraphs of the complaint—that is, the ownership of the property and the agreement to sell to plaintiff—but denies the third paragraph which alleges that the removal of said buildings from lots 1 and 2 aforesaid is a part of the consideration for the purchase of lots 3 and 4, block 1, or that he ever signed such agreement. Denies that he refused or neglected to remove said buildings until the month of July, 1901; admits that a portion of said buildings, for reasons beyond the control of this defendant, were not removed from lots 1 and 2 of said block 1, but that a portion of said buildings were almost immediately moved, and the buildings permitted by defendant to remain thereon in no way prevented the plaintiff from constructing his house or from keeping and performing each and all of the promises and agreements contained in the said written agreement and by him (plaintiff) promised to be kept and performed; denies that plaintiff was damaged in any sum by reason of defendant not carrying out his agreement or not removing the buildings; admits that on or about the tenth day of August, 1901, and at divers and sundry times, he called upon plaintiff for the payment of the first note and for the payment of both notes; admits that he notified, or caused plaintiff to be notified, that he would not accept any money upon said notes except the principal on both, together with the interest thereon, without deduction from any cause whatever; alleges that he was at all times ready and willing and prepared to accept any payment upon said notes offered or tendered by plaintiff, provided the same was made unconditionally and uncompromised by a demand for a reduction of said interest account; denies that August 10, 1901, or at any time prior there-

to, he was not financially able to respond to any judgment plaintiff might recover against him for damages, or that a judgment against him would have been uncollectable or worthless; denies the damage of $1,150 set out in the complaint.

Further answering, defendant Krall alleges: That plaintiff is not entitled to the relief prayed for, for the reason that the said plaintiff has at all times since making the agreement failed and refused to keep and perform his promises and agreements set forth in the written agreement; that prior to the twenty-second day of April, 1902, and almost constantly between the second day of April, 1901, and the twenty-second day of April, 1902, he demanded the money due on the notes, but plaintiff refused to pay any part thereof except upon terms involving a modification of the contract and agreement; that by such refusals he forfeited all rights under the contract, etc.; that April 22, 1902, defendant conveyed the lots in dispute to Della Gwinn; that long before the commencement of this suit plaintiff knew defendant had sold and conveyed the lots to Della Gwinn, and that defendant had no power or control over said premises, and for that reason knew this defendant was unable to convey said premises or any part thereof to plaintiff.

Defendants Gwinn answer for themselves, setting up title to the lots in dispute by virtue of a warranty deed executed by defendant Krall to Della Gwinn on the twenty-second day of April, 1902. There seems to be no dispute as to the conveyance by defendant Krall to Della Gwinn at the time and in the manner alleged.

After hearing all, the evidence offered and received by all the parties to the action, the court made its findings of fact and conclusions of law, and ordered judgment accordingly.

The court finds, first, that on or prior to April 2, 1900, defendant Krall was seised in fee simple of the lots in dispute, and that on said day plaintiff and defendant Krall entered into the written contract set out in the complaint. Second, that plaintiff has not paid the promissory notes with the interest as agreed or at all, etc. Third, that John Krall did not remove the buildings upon lots 1 and 2 in Krall's addition as men-

tioned in the agreement of April 2, 1900, until about July 1, 1901; that O. W. Smith has not built or constructed any residence of any nature or kind upon lots 3 and 4 described in the contract. Fourth, that plaintiff never at any time prior to the sale of the property covered by said contract of April 2, 1900, to Della Gwinn, tendered to John Krall the amount due under said contract, but at all times neglected and refused to pay the full amount due according to the terms of said contract; that O. W. Smith paid the taxes upon said property after the execution of said contract.

The fifth assignment finds that on April 22d, 1902, Krall sold and conveyed to Della Gwinn the lots in controversy, and that the consideration was $807; that plaintiff had knowledge of said sale not later than April 24, 1902; that the notes above referred to were returned to plaintiff and he was notified that he had forfeited his right under the contract above referred to; that at the time of the said sale above referred to plaintiff had not paid or tendered the amount due under the contract referred to in paragraph 2 of plaintiff's complaint, although the plaintiff had been requested to make such payments and to comply with said contract by defendant Krall.

The sixth assignment finds that on or about the second day of August, 1902, the plaintiff stated to defendant Krall that he was ready to pay the amounts due under said contract, including principal and interest, and exhibited a roll of money at said time without counting the same out to the defendant. That Krall notified plaintiff at said time that he had sold said property and had nothing further to do with the same.

As conclusions of law the court finds that the plaintiff failed to comply with the terms of the agreement set forth in plaintiff's complaint and had forfeited his right to conveyance under said contract, and is not entitled to the specific performance of the same.

Counsel for appellant insist that the evidence was insufficient to sustain the findings and decision of the court.

We find a very complete record in the case, and the attorneys

have favored the court with exhaustive briefs on all the issues involved. There seems to be no dispute as to most of the facts.

The contract for the sale of the lots by Krall to Smith— date, amount, terms and conditions—are all shown by the record. The second contract entered into is somewhat in dispute, Krall testifying that he has no recollection of the clause therein providing that the removing of the buildings should be a part of the consideration for the sale of the lots, but does not dispute the fact that he did enter into the two contracts. It is also beyond dispute that respondent Krall did not move the buildings from the lots as contemplated by the contract until about eleven months after he should have done so. It is further shown that he ignored repeated requests frcm appellant to comply with the contract by the removal of the buildings, but finally about July 1, 1901, he did remove the buildings. It is disclosed by the record that neither party to this transaction acted in good faith toward the other, respondent insisting on appellant paying the notes with interest when due, notwithstanding he had failed to comply with the clause in the contract for the removal of the buildings. On the other hand, appellant seeks to constitute himself the arbitrator of the shortcomings of respondent, and refuses to pay the notes with the interest as provided for in the notes and contract. The two contracts are not difficult of construction. Appellant agreed to pay a fixed consideration for this property, and paid $150 at the time of the execution and delivery of the contract and notes, and also agreed to pay all taxes that might be assessed against the property until he got his deed. This he did, but because respondent Krall did not remove the buildings as per his agreement, appellant refuses to comply with his contract, and only proposes to pay such amount on the notes as in his judgment he should pay. Thus we find them contending up until after the second note fell due, and soon thereafter respondent Krall says, after making another demand for payment from appellant and being refused, he executed the deed to Della Gwinn.

Appellant cites a long list of authorities holding that either party to a contract of the character before us before forfeiture

should give reasonable notice, also to the effect that the party first at fault should not be heard to complain of the laches of the other party. This is unquestionably the rule, but do the facts in this case bring it within the rule contended for?

Courts of equity do not make contracts for parties, merely construe them, and as we construe the contract in this case, time was of the essence of the contract, and both parties could be held to a strict performance of it.

If Mr. Krall was here asking the court to assist him in requiring the plaintiff Smith to comply with the contract, the authorities cited by appellant would apply, and we certainly would say to him, "The trial court by its findings says you have also violated the contract, and hence cannot be heard to complain here, and you must first make the plaintiff whole in any damage he may have sustained by reason of your failure in the performance of your contract."

In this case Mr. Krall is not in court asking any assistance from it; he stands on his contract and insists that he only did what the contract authorized him to do when he sold the lots to Della Gwinn. This fact is conceded by appellant. He admits that he never made a tender to respondent until after he knew the lots had been sold and conveyed to another party. In equity the party asking relief must came into court with clean hands and good faith, and as we view it neither party to this contract would have any standing in court asking its assistance in the enforcement of this contract. We cannot refrain, however, from saying that good faith and honest dealing would have prompted Mr. Krall to have tendered back the payment of $150 on the contract as well as the taxes on the property theretofore paid by appellant, amounting to $48. This is based on the statement of appellant that he had been greatly damaged by the failure of respondent to remove the buildings and which he assigns as his reasons for not tendering to respondent Krall the payments as they fell due. This, however, did not excuse him from a compliance with his contract. He had entered into a solemn obligation to meet the payments as they fell due, and before he can be heard in equity he must show that he is not at fault in any of his obligations. In other words, he cannot

plead the laches of Krall in justification of his own short-comings.

We think we are justified in this conclusion by all the modern authorities to which our attention has been called. We have carefully examined all the questions raised by appellant, and whilst we have not taken them up in the order named in the brief and record, we do not find any error that would warrant a reversal of the judgment.

We conclude that this judgment should be modified to the extent that the respondent Krall should be required to pay appellant Smith the amount of taxes paid on the property, together with the $150 paid to Krall at date of contract.

The judgment is modified as above indicated, each party to pay their own costs, and cause remanded for further proceedings in harmony with this opinion.

Sullivan, C. J., and Ailshie, J., concur.