(November 14, 1908.)

## THE PRAIRIE DEVELOPMENT COMPANY, LTD., a Corporation, Respondent, v. JOHN B. LEIBERG and CARRIE E. LEIBERG, His Wife, F. A. BLACKWELL and Mrs. F. A. BLACKWELL, His Wife, Appellants.

[98 Pac. 616.]

WRITTEN CONTRACT—MODIFICATION—EXTENSION OF TIME FOR PAYMENT—SPECIFIC PERFORMANCE—RULE OF EVIDENCE.

1. Where time is made of the essence of a contract for the sale of real property, and the contract fixes the time and place of payment, the fact that a partial payment is made and accepted at a place other than that fixed by the contract will not constitute a modification of said contract as to the time and place of future payments.

2. Where time is made of the essence of a contract for the sale of real property, and the vendor extends the time within which a partial payment may be made, such fact, alone, will not amount to a modification of said contract as to future payments, or waive the conditions in said contract as to the time and place of future payments.

3. A written contract for the sale of real property may be modified by a subsequent oral agreement, but where it is claimed that an oral agreement modifies the terms of a written contract, the evidence to establish such oral agreement should be clear and satisfactory.

4. Where one seeks to enforce specific performance of a contract, such contract and the terms thereof should be established by clear and satisfactory evidence.

5. In an action for specific performance of a contract, the rule that a case will not be reversed where there is a substantial conflict of evidence must be taken and considered with that other rule that, to enforce specific performance, the evidence must establish such contract and the terms thereof clearly and satisfactorily.

6. A substantial conflict of evidence does not necessarily arise out of the fact that there is some evidence to support a contract in an action for specific performance, for in such action the contract and its terms must be established by clear and satisfactory evidence, and the conflict must be substantial in the light of this rule.

7. Where there has been a part performance of a contract to sell real property, and partial payments have been made, and a forfeiture of all that has been paid is insisted upon, a court of equity

will turn to the party insisting upon such forfeiture and inquire whether his conduct was responsible for, or led the vendee to refrain from complying with the provisions of said contract, which resulted in the default.

8. Where there has been a part performance of a contract, and the failure of full performance was not the fault of the vendor, but was the result of the acts and solicitations of the vendee, and the conduct of the vendor in no way induced or misled the vendee, the mere fact that the vendor and vendee were negotiating with reference to the subject of said contract would not relieve the vendee from complying with the terms of said contract.

9. Where time is made of the essence of a contract for the sale of real property, the vendor will not be required to notify the vendee of his intention to declare a forfeiture unless payments be made in accordance with the provisions of said contract, before said vendor can insist upon and enforce a forfeiture of said contract.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District, for Kootenai County. Hon. W. W. Woods, Judge.

An action for the specific performance of a contract for the sale of real property. Judgment for plaintiff. Defendants appeal from the judgment. *Reversed.*

John P. Gray, for Appellants.

If it is doubtful whether an agreement has been concluded or is a mere negotiation, and unless the proof is clear and satisfactory both as to the existence of the agreement and as to its terms, chancery will not decree specific performance. (*Dalzell v. Dueber Watch Co.,* 149 U. S. 320, 13 Sup. Ct. 886, 37 L. ed. 749; *Carr v. Duval,* 14 Pet. 79-83, 10 L. ed. 361; *Nickerson v. Nickerson,* 127 U. S. 668-676, 8 Sup. Ct. 1355, 32 L. ed. 314; *Hennessey v. Woolworth,* 128 U. S. 438-442, 9 Sup. Ct. 109, 32 L. ed. 500; *Colson v. Thompson,* 2 Wheat. 336-341, 4 L. ed. 253.)

The specific performance of a contract resting either wholly or in part in parol will not be enforced upon a mere preponderance of testimony. The burden is upon the plaintiff to show clearly, definitely and conclusively a contract, leaving no *jus deliberandi* or *locus penitentiae.* (*Purcell v. Miner et*

*al.,* 4 Wall. 513, 18 L. ed. 435; *DeSollar v. Hanscome,* 158 U. S. 216, 15 Sup. Ct. 816, 39 L. ed. 950; *Deeds v. Stephens,* 10 Ida. 332, 79 Pac. 77, 78.)

Payment or tender within the time must be made in order to give the vendee under a contract of purchase any rights where time is of the essence of the contract. (*Kelsey v. Crowther,* 162 U. S. 404, 16 Sup. Ct. 808, 40 L. ed. 1017; *Kentucky Distilleries & Warehouse Co. v. Warwick,* 109 Fed. 280, 48 C. C. A. 363; *Whiteman v. Perkins,* 56 Neb. 181, 76 N. W. 547; *Emerson v. Slater,* 22 How. 28, 16 L. ed. 360; *Smith v. Krall,* 9 Ida. 538, 75 Pac. 263.)

Time is a material element of the contract when made of the essence thereof by the express stipulation of the parties, and cannot be extended except by writing. (*Blood v. Goodrich,* 9 Wend. (N. Y.) 68, 24 Am. Dec. 121; *Cook v. Bell,* 18 Mich. 391; *Ladd v. King,* 1 R. I. 224, 51 Am. Dec. 624; *Stowell v. Robinson,* 3 Bing. & C. 928; *Steed v. Dauber,* 2 Per. & D. 447; *Marshall v. Lynn,* 6 Mees. & W. 109; *Clark v. Guest,* 54 Ohio St. 298, 43 N. E. 862; *Platt v. Butcher,* 112 Cal. 634, 44 Pac. 1060; *Atlee v. Bartholomew,* 69 Wis. 43, 5 Am. St. Rep. 103, 33 N. W. 110; *Hasbrouck v. Tappen,* 15 Johns. 200; *Abell v. Munson,* 18 Mich. 306, 100 Am. Dec. 165.)

Frank T. Post, for Respondent.

The findings made by Judge Woods are sustained by a clear preponderance of the evidence. But, if that were not the fact, there being material evidence to sustain each finding, the question of preponderance is immaterial under repeated decisions of this court. (*Heckman v. Espey,* 12 Ida. 758, 88 Pac. 80; *Robertson v. Moore,* 10 Ida. 126, 77 Pac. 218; *Stuart v. Hauser,* 9 Ida. 71, 72 Pac. 719; *Abbott v. Reedy,* 9 Ida. 581, 75 Pac. 764.)

On May 16th the wife entered into an optional contract with a third party, without notice to the purchaser, and without giving the purchaser any opportunity of complying with the contract, and without tendering back to the purchaser the $6,500 received, or any part thereof. Such conduct does

not appeal to a court of conscience, and will not prevent specific performance. (*Cheney v. Libby,* 134 U. S. 68, 10 Sup. Ct. 498, 33 L. ed. 818; 6 Pomeroy's Eq. Jur., secs. 810, 816; *Damon v. Cheney,* 28 Fed. 500; *Insurance Co. v. Eggleston,* 96 U. S. 572, 24 L. ed. 841; *Camp Man. Co. v. Parker,* 91 Fed. 705, 34 C. C. A. 55; *O'Connor v. Hughes,* 35 Minn. 446, 29 N. W. 152; *Higinbotham v. Frock,* 48 Or. 129, 120 Am. St. Rep. 796, 83 Pac. 536; *Eaton v. Schneider,* 185 Ill. 508, 57 N. E. 421; *Monson v. Bragdon,* 159 Ill. 61, 42 N. E. 383; *Watson v. White,* 152 Ill. 364, 38 N. E. 902; *Smith v. Krall,* 9 Ida. 535, 75 Pac. 263.)

The contract in this case is not an optional contract, but a bilateral contract. The vendee agrees to buy and to pay the whole consideration. It is not intended that he may declare the contract void, or make it void by failure to pay. If the contract were to become absolutely unenforcible or void, or at an end at the election of the vendee by his failure to make such payment or perform some other covenant, then the contract would be merely a unilateral contract, or, in other words, an option granted to the vendee. (*Mason v. Caldwell,* 10 Ill. 196, 48 Am. Dec. 330; *Wilcoxson v. Stitt,* 65 Cal. 596, 52 Am. Rep. 310, 4 Pac. 629; *Cartwright v. Gardner,* 5 Cush. 281.)

STEWART, J.—This is an action for the specific performance of the following contract:

"This contract, made and entered into this 26th day of December, A. D., one thousand nine hundred and five, by and between Mrs. Carrie E. Leiberg and John B. Leiberg of the first part, and J. Grier Long, 'Trustee,' of the second part, witnesseth as follows, to wit:

"I.   The party of the first part, for their heirs, executors and administrators, agree to sell to the party of the second part, all those certain pieces or parcels of land situated in the County of Kootenai and State of Idaho known and described as follows to wit: All of section (17) seventeen. All of section (3) three and the southwest quarter of the northwest quarter and lots numbered one, two, three and four of Sec-

tion (2) two; all of the above land is in township fifty-three north of range two west of Boise Meridian in Idaho; also a fraction containing about seven acres and lying to the north of and adjoining the above described lands and the water rights on Vesta Creek, Cat Creek and Barker Creek.

"II.   The party of the second part, for their heirs, executors, administrators and assigns, agree to buy of the party of the first part said above described lands and to pay the party of the first part for the same the sum of ($41,000.00) forty-one thousand and no-100 dollars in the manner following to wit: Five hundred and no-100 dollars on delivery of this contract and the remainder, forty thousand five hundred dollars, to be paid in four payments as follows, to wit: Nine thousand five hundred dollars on or before May 1st, 1906; eleven thousand dollars on or before May 1st, 1909; ten thousand dollars on or before May 1st, 1911; ten thousand dollars on or before May 1st, 1913; deferred payments to bear 6 per cent interest per annum, all payments to be made at the office of Traders National Bank, Spokane, with interest thereon at the rate of 6 per cent per annum from date until due, and thereafter on the whole sum remaining due or unpaid in each year interest at 6 per cent per annum until paid; interest all payable annually, and said party of the second part shall also pay and discharge all taxes and assessments imposed on said premises from and after the date hereof, whether ordinary, extraordinary or for revenue purposes, within three months from the first day on which the same become due and payable, including all taxes, for the year 1906 and all taxes thereafter.

"III.   Forthwith; after the full payment of said purchase money, taxes and interest, as aforesaid, time being the essence of this contract, the party of the first part agrees to execute or cause to be executed to the party of the second part a good and sufficient warranty deed for said described premises, to be delivered on the surrender of this duplicate contract.   It is further agreed and understood that the first party shall have the right and privilege of executing to the said second party a deed to said above described lands at any time

before the final payment shall have been made, and that the said second party shall then and there cause to be properly executed to said first party notes and mortgage for the unpaid balance of purchase money, the same to be secured by first mortgage on said premises.

"IV. It is expressly agreed that time is of the essence of this contract, and in case of default by the party of the second part, their heirs or assigns, in any of the conditions above stipulated to be performed by them, then and in that case this contract shall become void and the party of the second part shall have forfeited their rights hereunder and any payments that shall have been made shall become forfeited to the party of the first part, which said payments it is hereby specifically agreed shall in that case be deemed as damages hereby liquidated for the non-performance of this contract by said second party.

"V. Nothing herein shall be construed to entitle said second party to possession of said premises until the payment of the $9,500.00 above mentioned.

"In witness whereof, the parties have hereunto set their hands and affixed their seals the day and year first above written.

"(Signed)   JOHN B. LEIBERG.          (Seal)
            "CARRIE E. LEIBERG.        (Seal)
            "J. GRIER LONG, Trustee."   (Seal)

After setting forth the contract and its assignment to plaintiff, the defendants allege the payment of $500 upon the execution and delivery of the contract, and that on May 1, 1906, the plaintiff paid to the defendants, and the defendants accepted, the sum of $6,000 as part payment of the installment of the purchase price, due on May 1, 1906; and on said date, by an instrument in writing, duly executed by said defendants, said defendants agreed to give the plaintiff until May 15, 1906, in which to pay the balance of said payment, to wit, the sum of $3,500. The complaint then alleges that an agreement was entered into between the plaintiff and defendants, by which the defendants agreed to call at the office of the plaintiff on May 15, 1906, at which time the said

deferred payment of $3,500 was to be made, and that the said defendants, upon said date, would further discuss with plaintiff the giving of a deed and the acceptance of a mortgage to secure the balance of the purchase price; that on said May 15, 1906, plaintiff was ready and willing and able to pay the said balance so due on said date, to wit, the sum of $3,500, and was ready, able and willing to execute and deliver, and offered to execute and deliver, to defendants the said promissory notes and a mortgage to secure the same; that the defendants failed to come to the office of plaintiff or execute the deed, or arrange with plaintiff for the execution of the mortgage and notes to secure the balance of the purchase price.

The answer put in issue all of the allegations of the complaint, except the execution and delivery of the written contract set forth in this opinion, its assignment, and the payment of the $500 at the time of its execution, and the payment of the $6,000 on May 1, and the extension of the time of the payment of $3,500 to May 15, 1906.

Upon the issues thus presented, the cause was tried to the court, findings of fact and conclusions of law were made, and a decree rendered in favor of the plaintiff. Among other things, the court found that at the time of the payment of the $6,000 on May 1, 1906, the defendants executed in writing and indorsed on the back of said contract an extension of the time of payment of the balance due upon May 1st, in the following words, to wit:

"Spokane, May 1st, 1906.

"Received ($6,000) Six Thousand Dollars on the within contract, and we agree to wait until May 15, '06, for the remainder of the payment ($3,500) Three Thousand Five Hundred Dollars, being the remainder on first payment.

(Signed) "JOHN B. LEIBERG,
"CARRIE E. LEIBERG."

—that it was agreed and understood at the time and delivery of said check and the signing of said extension that on May 15, 1906, the Leibergs were to come to the said office of the plaintiff and there receive the balance of the purchase price

due, to wit, $3,500, and in case said parties agreed upon a form of mortgage, deliver to the plaintiff the deed called for in the contract and receive the plaintiff's notes and a mortgage to secure the same; that prior to May 15, 1906, Carrie E. Leiberg came to the office of the plaintiff and discussed the matter of the form of mortgage, but nothing was done at that time; that a day or two thereafter the said defendants, Leibergs, sent a messenger to the office of said plaintiff to obtain the proposed form of mortgage for examination, and plaintiff then and there handed to said messenger said proposed form, and said messenger took the same and delivered the same to defendant, Carrie E. Leiberg; that said proposed form of mortgage was contained in an envelope, and in the same envelope was contained the original contract between said Leibergs and Long, assigned to plaintiff, together with other papers, and all of said papers were handed to said messenger by mistake; and all of said papers were handed by said messenger to said Carrie E. Leiberg before May 15, 1906; that she examined all of said papers, observed the same, but failed and neglected, prior to said May 15th, or thereafter, to return to the plaintiff the contract or the mortgage, or to advise the plaintiff of the fact that they had the original contract or other papers so delivered by mistake, or to advise the plaintiff whether or not said form of mortgage was satisfactory; that the Leibergs did not come to the office of the plaintiff on May 15th, or communicate with the plaintiff in any manner on that day, nor did said Leibergs on May 15th, or at any other time, tender to the plaintiff a deed or a conveyance of said land, or offer to make any conveyance thereof.

The appeal is from the judgment. Many errors are assigned but they all arise out of three propositions: 1st. Did the acceptance of the payment of $6,000 at the office of the plaintiff on May 1st, and in a manner other than that specified in the contract, amount to a waiver of the conditions of said contract as to all future payments? 2d. Did the acts of the Leibergs and the transactions and negotiations between the plaintiff and the Leibergs on May 1st, and subsequent thereto, amount to a modification of said contract so as to

waive the provisions of said contract as to the payment of said $3,500 on May 15, 1906, and as to future payments? 3d. Did the action and conduct of the Leibergs mislead the plaintiff or cause plaintiff to postpone or delay the payment of said $3,500 beyond the time fixed, to wit, May 15, 1906?

It will be observed by the terms of the contract, time is made of its essence. Under the provisions of the contract, therefore, it was necessary for the plaintiff to make the payment of $3,500 on May 15, 1906, at the place named in the contract, unless the time and place of making such payment were waived by the Leibergs. The fact that the $6,000 paid on May 1, 1906, was paid in a different manner and at a different place from that specified in the contract would not of itself amount to a waiver of the conditions of said contract as to future payments. The payment of the $3,500 on May 15th at the Traders' National Bank, as specified in said contract, was not changed to the office of the plaintiff by reason of the fact that the $6,000 was paid at the office of the plaintiff, in the absence of an agreement that such payment should be made at such office. The receipt indorsed upon said contract for the payment of the $6,000 does not in terms modify said contract in any respect except as to when the balance of the payment due on May 1st should be made, and the mere fact that the defendant accepted such payment at a place other than that fixed in the contract would not affect the place of payment of the deferred payments due under said contract. It would be a strange proposition, indeed, to say that because a party accepted payment of an amount due under a contract at a place other than that specified by the contract, that the contract was thereby modified as to the place of all future payments. Unless some other agreement was made between the parties than that indicated by the writing of May 1, 1906, the terms and provisions of said contract as to all matters not covered by said writing would be binding upon the parties as written in said contract, and the defendants would be justified in relying upon and insisting that said contract be complied with in all other matters than that covered by said writing. (*Machold v. Farnan*, 14 Ida. 258,

94 Pac. 170.)  But counsel for respondent contends, and the trial court seems to have agreed with this contention, that at the time of the payment of the $6,000 on May 1, 1906, it was understood between the parties that the Leibergs should come to the office of the plaintiff on May 15th and receive the payment of the $3,500, and at said time would agree upon a form of mortgage to secure the balance of the purchase money, and make a deed.  Whether this contention is tenable or not depends upon the evidence.  By the provisions of the contract, it is entirely discretionary with the appellants as to whether or not they would accept a mortgage and make a deed before final payment.  This provision of the contract is for their benefit, and they could not be compelled to execute a deed or accept a mortgage unless they expressly agreed to such modification of the contract.  The mere fact that they had under consideration the question as to accepting a mortgage and making a deed before final payment would not deprive them of their right to insist upon the provisions of said contract.

From the evidence it appears that, prior to May 1st, the plaintiff suggested to the defendants that perhaps it would desire further time for the payment of the $9,500 due on May 1, 1906, and that the defendants execute a deed and accept a mortgage for the balance of the purchase money.  Accordingly, a form of mortgage was prepared by the plaintiff and submitted to the defendants.  This form of mortgage was not acceptable to the defendants, and they so informed the plaintiff, and notified the plaintiff that under no circumstances would they sign the same.  The only evidence to the effect that the defendants would accept the payment of the $3,500 at a place other than that fixed by the contract in writing, to wit, the Traders' National Bank, and the only evidence with reference to the defendants' reporting to the plaintiff and discussing and agreeing upon a form of mortgage, is the evidence of Mr. Hutchinson, an employee of the plaintiff.  He says:

"They finally agreed that they would extend the time. *They would come in and get it on the 15th.*  They said for me to place my own time; they were not in need of money—

fix my own time.   I said, 'All right, then, we will make it
the 15th.'   I said, I would write it on the contract.   They
said that was not necessary.   They were not in need of any
money and I could keep it just as long as I wanted it.   I told
them I was doing business for other people and I preferred
to indorse it on the back of the contract, and I did, and they
signed it.   We then turned the conversation in regard to the
mortgage and notes.   I told them I would prepare a mort-
gage which would be satisfactory to them *when they came on
the 15th for the money, and they agreed they would come in
on the 15th for the money,* bring a deed, and take the notes
and mortgages for the purpose of securing the other pay-
ment.''   This evidence of Mr. Hutchinson, except as to the
extension of the time for the payment of the $3,500, which is
in writing, is specifically and positively denied by both Mr. and
Mrs. Leiberg.

It further appears from the evidence that on the 14th day
of May, Mrs. Leiberg caused a note to be sent to plaintiff re-
questing the mortgage, and that plaintiff sent her the orig-
inal contract and the mortgage which had previously been
drawn by the plaintiff, and which the defendants had refused
to sign, and so notified plaintiff.   When defendants found the
plaintiff had sent them the rejected mortgage, they gave no
further consideration to the matter, did not return to the of-
fice of the plaintiff on the 15th, or return to them either the
original contract or the mortgage which was inclosed in the
same papers.   Mr. Hutchinson further testified that on May
15th he waited at his office all day for the purpose of making
the payment, and that the company had the $3,500, and was
able to make, and would have made, the payment if the de-
fendants had called for the same; and on the afternoon of
the 16th, he went to look for Mrs. Leiberg but was unable to
find either her or her husband; that on Saturday, the 19th,
he hunted up Mr. and Mrs. Leiberg, and told them that he
was ready with the money, and that they had better come
over Monday morning and fix it up—that he was ready to
pay them any time.   Mr. Leiberg said he thought they were
trying to swindle him, as they asked him to release forty

acres of land, and that they did not keep their part of the contract, that the money was to be payable at the bank. Hutchinson said he told him that they were to come over to his office and get the money, and Leiberg said the contract said that the plaintiff was to put the money in the bank. Hutchinson then asked him to come Monday and he said he would not. On the 21st, Hutchinson took the $3,500, with the interest, and tendered it to the Traders' National Bank, and the bank refused to take the money.

From this the trial court concluded that the contract was modified to the extent that it was incumbent upon the Leibergs to call at the office of the plaintiff and accept payment of the $3,500 at such office, and that they had agreed to come to the office of the plaintiff to arrange for the acceptance of the mortgage and the execution of the deed, and that they were not in a position to declare a forfeiture until they had complied with such arrangement. We cannot agree with this contention. The conversation with reference to the payment of the $3,500 and the giving of a deed and the acceptance of a mortgage was at the same time and during the same conversation at which the defendants agreed to give plaintiff an extension of time for the payment of the $3,500 to May 15th. This extension agreement was indorsed upon the written contract, and it is reasonable to presume that had the defendants agreed to such an important matter as that now contended for by plaintiff, that such agreement would also have been indorsed upon said contract. If this agreement were made, it would seem that the plaintiff would also have prepared the mortgage in accordance with the agreement, and not have sent to the defendants a second time the mortgage which the defendants had positively and absolutely repudiated and refused to accept.

Under the terms of the written contract, the $3,500 was payable at the bank and not at the office of the plaintiff. All Hutchinson testifies to with reference to the acceptance of the $3,500 on the 15th is: "They would come in and get it on the 15th. I told them I would prepare a mortgage which would be satisfactory to them when they came on the 15th

for the money, and they agreed they would come in on the 15th for the money.'' This is not an agreement to accept the payment of the $3,500 at any place other than that specified in the contract. At most, the defendants agreed that they would come in on the 15th for the money, but they did not agree that the money should be paid at the office of the plaintiff, or that the place of payment should be changed from the bank to the plaintiff's office. The conversation with reference to the taking of a mortgage and the execution of a deed certainly cannot be dignified as an agreement. The terms and conditions were not agreed upon by the parties. The minds of the parties did not meet as to the form or character of the mortgage. This is admitted by the plaintiff, so the agreement, if any was made, would not extend beyond the payment of the $3,500; and inasmuch as the place of payment was not changed from that fixed in the written contract, it could not amount to a modification of such contract, and cast upon the defendants the necessity of accepting payment at the office of the plaintiff, or relieve the plaintiff of the necessity of making such payment in the manner fixed by the contract. That a written contract may be modified by a subsequent oral contract must be conceded, but where it is claimed that an oral contract was made which modifies or changes a written contract, the evidence to establish such fact must be clear and satisfactory. It ought not to leave any uncertainty as to the intent of the parties, and to entitle the plaintiff to a specific performance of the contract, the evidence should show clearly and satisfactorily the existence of a contract and its terms.

In the case of *Deeds v. Stephens,* 10 Ida. 332, 79 Pac. 77, this court held:

''The rule is well established that one who seeks to enforce a specific performance of a contract is bound to establish clearly and satisfactorily the existence of the contract and its terms.''

This, we believe, is the rule generally recognized by the courts of the land. In any event, it is the rule in this state.

Counsel for respondent, however, contend that the cases of

*Robbins v. Porter*, 12 Ida. 738, 88 Pac. 86, and *Morrow v. Matthew*, 10 Ida. 423, 79 Pac. 196, announce a different rule. An examination of these cases, however, will, we think, readily convince anyone that the court did not announce a different rule from that announced in *Deeds v. Stephens.* The case of *Robbins v. Porter* refers to the case of *Morrow v. Matthew*, and seems to affirm the doctrine therein announced. In the latter case the court, through Justice Ailshie, says:

"When the fact is established that the contract was entered into and the terms and conditions thereof are shown, it will be enforced, whether in writing or parol. It is also true that the courts have quite generally held that in order to enforce the specific performance of a parol contract, it must be clearly and satisfactorily shown to the trial court as to its execution and the terms and conditions thereof. If the contract has not been reduced to writing, it must of necessity require a greater weight of evidence to establish its existence, and the terms and conditions thereof, and in those respects satisfy the mind of the court, than if the contract were in writing and produced in evidence. Where, however, the record discloses such facts that a fair and reasonable person might conclude therefrom as to the execution, terms and conditions of the contract, I do not see how an appellate court is justified in saying that it did not appear *clearly* and *satisfactorily* to the trial court."

This is the same rule as announced in *Deeds v. Stephens, supra.* The force of this rule is apparent in this case, for we find the original contract between the parties to have been reduced to writing. All the details are set out in said contract and time is made of its essence. The plaintiff now contends that such written contract was modified by an oral agreement afterward entered into by the parties. To support this contention, it is necessary for the respondent to establish such oral agreement and by clear and satisfactory evidence.

Counsel for respondent, however, relies upon another rule announced and followed by this court, and that is that where there is a substantial conflict in the evidence, the appellate

court will not reverse the judgment of the trial court. This latter rule must be read and considered in the light of the former rule, that to entitle a person to specific performance of a contract, the evidence must establish the contract and its terms clearly and satisfactorily. Even if there be some evidence to support the contention that an oral contract was made which modifies a written contract, and to enforce which an action is brought, still it cannot be maintained unless the evidence is clear and satisfactory. A substantial conflict of evidence does not arise out of the fact that there is some evidence to support the contract. The conflict must be substantial in the light of the rule that the evidence must be clear and satisfactory. In other words, in an action for debt and that class of cases, a mere preponderance of evidence is sufficient to justify a verdict and judgment, while in an action for the specific performance of a parol contract, the evidence must be clear and satisfactory. In each of these classes of cases a different degree and greater weight of evidence is required to support the judgment, and still the appellate courts have held in these cases that if there is a substantial conflict in the evidence, the judgment will not be disturbed on appeal. In the case of these different rules, it is self-evident that evidence in a case where mere preponderance of evidence is required might be considered by the appellate court as being in substantial conflict, whereas the same degree of evidence in the latter class would not be considered as constituting a substantial conflict. The determination as to whether or not there is a substantial conflict in the evidence in a given case is determined by the rule or class under which the particular case falls. There is no substantial conflict in the evidence as to whether the written contract was modified by an oral agreement. If the written contract was not modified, then the plaintiff cannot maintain this action, for there is no pretense that the plaintiff complied with the written contract.

The respondent also contends that the appellants are not in a position to insist upon the forfeiture in this case, for the reason that the acts of the appellants were the cause which

led the respondent to fail to make payment of the $3,500 at the bank as provided in said contract. To sustain this contention, the respondent relies upon the principle announced in the case of *Damon v. Cheney,* 28 Fed. 500, and other similar cases, to the effect that where there has been a part performance, and a forfeiture of all that has been paid is insisted upon, a court of equity will turn to the party insisting upon the forfeiture, and inquire whether his conduct fails in the slightest degree. Applying this rule to the case at bar, it will be observed that the appellants did not fail to meet every obligation contained in the contract. There was nothing to which the appellants agreed which they failed to perform. The failure was all upon the part of the respondent. It was at its solicitation that the defendants even discussed and considered the question of accepting a mortgage. It was through respondent's acts that the $6,000 was paid at the office of the respondent. It was respondent asking for favors, and not appellants. There is nothing in the evidence in this case which shows that the conduct of the appellants in any way misled the respondent or caused it to fail to keep or perform its part of said contract. We find nothing in the conduct or acts of the appellants which amounted to a waiver of their rights under said contract.

Counsel for respondent further argue that the appellants could not accept the $6,000 paid on May 1st, and retain it and declare a forfeiture for failure to make other payments specified in said contract, without notifying the respondent of their intention to declare a forfeiture and the respondent given a reasonable time in which to comply with said contract. This is not the law. We are not aware of any authorities which hold that where time is made of the essence of a contract, and payments are not made in accordance with such contract, that the other party is required to serve notice upon such defaulter of the intention to declare such contract forfeited unless the payments be made in accordance therewith, and that a reasonable time must be given for complying with said contract. (*Machold v. Farnan,* 14 Ida. 258, 94 Pac. 170; *Smith v. Krall,* 9 Ida. 535, 75 Pac. 263; *Kelsey v. Crowther,*

162 U. S. 404, 16 Sup. Ct. 808, 40 L. ed. 1017; *Kentucky Dis. & Warehouse Co. v. Warwick Co.,* 109 Fed. 280, 48 C. C. A. 363; *Taylor v. Longworth,* 14 Pet. 172, 10 L. ed. 405.)

A number of other questions are argued upon this appeal, but inasmuch as the case must be reversed and a judgment must be ordered in favor of appellants, it is unnecessary to consider such questions. The judgment in this case will be reversed, and the trial court is directed to make findings and enter judgment in accordance with this opinion. Costs awarded to the appellants.

Ailshie, C. J., and Sullivan, J., concur.