[No. 7.  Decided June 2, 1890.]

WILLIAM M. WHITE v. THE TERRITORY OF
WASHINGTON.

FORGERY — INDICTMENT — JUROR — EVIDENCE — INSTRUCTIONS.

An indictment for forgery which correctly sets forth a copy of the forged draft, with the exception of the figures cut therein, is not defective, the figures cut in the draft, in a legal sense, being no part of the instrument.

An indictment charging that defendant uttered and published as true a certain false and forged writing, which is set out in full in the indictment, is sufficient to warrant proof of the alteration of an instrument originally genuine.

Where a juror states that he has impressions as to the merits of the cause about to be tried, it is not error to exclude his answer to the question, whether or not such impressions are favorable to defendant.

Where the defense, in the examination of a witness, has called out part of a conversation, the prosecution may call either party to it in order to prove the entire conversation.

Although there may be isolated sentences in an instruction which, in themselves, are objectionable, and the instructions probably intimate to the jury the opinion of the trial judge as to the value of some portions of the evidence, yet if the instructions

clearly give the jury to understand that the facts are exclusively for them, and, taken as a whole, fairly state the law applicable to the evidence introduced, the judgment will not be reversed.

### Appeal from District Court, King County.

Indictment for forgery against William M. White, verdict of guilty, and defendant sentenced to fourteen years in the penitentiary. Defendant appeals. The facts are stated in the opinion.

*James Hamilton Lewis,* and *W. Lair Hill,* for appellant.

In an indictment for forgery, or for uttering a forged instrument, the instrument must be set forth exactly as it is, and proved exactly as set forth. Whart. Crim. Pl. and Pr., § 167; *Brown v. People,* 1 Am. Cr. Rep. 229; *Luttrell v. State,* 4 Am. State Rep. 764; *State v. Street,* 1 Am. Dec. 589.

The draft introduced in evidence contained important matters not shown upon the draft as set forth in the indictment, namely: The figures which were cut out by the machine or instrument ordinarily used by banks, and which is an important part of such drafts. This was a substantial variance. *Luttrell v. State,* 4 Am. State Rep. 763-4; *United States v. Fissler,* 12 Myer's Fed. Dec. 625c.

The indictment charged generally the drawing of a forged draft. The evidence of the prosecution, as appears by the record, went simply to the fact that the draft offered in evidence was a genuine draft originally; that the signatures were genuine, but that there had been an alteration in the body of it. The defendant was not notified by the indictment that he was to be put upon his trial for the uttering of a draft originally genuine, but afterwards altered in the body of it, without any change in the signatures. This was an error prejudicial to him. Code Wash. T. §§ 1002-7; Whart. Crim. Pl. and Pr., §§ 153-5; *United States v. Hess,* 124 U. S. 516, 483; *United States v. Cruikshank,*

92 U. S. 542; *Hurland v. Territory,* 3 Wash. T. 131; *People v. Taylor,* 3 Denio, 94; *People v. Thoms,* 3 Park. Cr. Cas. 256; *State v. Henry,* 59 Iowa, 391; *State v. Parker,* 6 Am. Dec. 735; *State v. Flye,* 26 Me. 312; 1 Whart. Crim. Law (9th ed.), §§ 735–40.

*W. C. Jones,* Attorney General, and *Stratton & Fenton,* for The Territory.

The draft proven is in words and figures the same as pleaded, excepting that the perforations made in the paper upon which the draft is printed, are not made in the indictment. We do not concede that it was necessary to perforate the indictment or lithograph the draft therein, in order to come within the rule as to variance. The number of a bank bill and marginal figures indicating its amount need not be set out in the indictment. *Com. v. Bailey,* 1 Mass. 62; *Com. v. Stevens,* 1 Mass. 203; *Griffin v. State,* 14 Ohio St. 55; *State v. Calendine,* 8 Iowa, 288; *State v. Briggs,* 34 Vt. 501; *Com. v. Adams,* 7 Metc. 50; *Miller v. People,* 42 N. Y. 304; 11 Am. Rep. 706; *People v. Phillips,* 70 Cal. 61.

Proof of uttering an altered draft will support an indictment charging the uttering of a false and forged draft. The draft is both false and forged, when altered in the body thereof, in a material matter, and is as much false and forged as if the body had not been changed, but the signature forged. *Stoughton v. State,* 2 Ohio St. 566; *Mackey v. State,* 3 Ohio St. 362; *Bailey v. State,* 4 Ohio St. 440; *People v. Frank,* 28 Cal. 513; *Bittings v. State,* 56 Ind. 101; *State v. Marvels,* 2 Harr. 527.

The opinion of the court was delivered by

Hoyt, J. — Defendant was convicted of the crime of forgery in the district court for the Third judicial district, holding terms at Seattle. Numerous exceptions were taken to the ruling of the court during the progress of the cause,

and errors thereon have been duly assigned, and the case brought here for review. Nearly all of the errors assigned have been relied upon here as cause for reversal, and have been argued by counsel with great diligence and ability. We do not, however, feel called upon to discuss the questions arising upon each of said alleged errors separately, and shall content ourselves with the examination of four principal questions, as we think that the mind of the court as to the other errors assigned will be sufficiently indicated by such discussion.

The questions which we shall notice are as follows: 1. As to the sufficiency of the indictment; 2. As to the challenge of the juror McRedmond; 3. As to the testimony of the witness Morrisett; 4. As to the instructions to the jury. The following is a copy of the indictment:

"Wm. M. White is accused by the grand jury of the Territory of Washington, for the county of King, in the Third judicial district of said territory, by this indictment, of the crime of forgery, committed as follows: The said Wm. M. White, on the 25th day of May, A. D. 1889, in the county of King, in the district aforesaid, then and there being, did, then and there, willfully, knowingly, falsely, fraudulently, unlawfully and feloniously utter and publish as true, to the Puget Sound National Bank of Seattle, the same being a body corporate under the banking laws of the United States, a certain false and forged writing on paper of the tenor following:

" 'The Commercial National Bank, No. 16743, Portland, Oregon, May 13, 1889. At sight of this first exchange, second and third unpaid, pay to the order of J. C. Smith ($2,500.00) twenty-five hundred dollars, value received, and charge the same to the account of R. L. Durham, cashier. To the National Bank of the Republic, New York City,' with the words 'J. C. Smith ' and ' Wm. M. White' written on the back of said paper; he, the said Wm. M. White, then and there well knowing the said instrument of writing to be false and forged, with intent then and there to injure and defraud the Puget Sound National Bank, and other persons to the jurors unknown, contrary to the form of the statute in such case made and provided,

and against the peace and dignity of the Territory of Washington."

The act allowed to be proved under said indictment was the uttering by the defendant of a draft, originally genuine, for $25.00, which had been altered to $2500.00. The indictment correctly sets out the altered draft with the exception that in the draft itself there appeared the figures "$2500" cut therein, which did not appear in the copy in the indictment; and it was claimed that such omission made the draft inadmissible in evidence. We think, however, that such figures so cut in the draft were no part of the contract contained therein. Such figures were no more a part of the instrument, in a legal sense, than are the marginal figures on a bank note, or the lathe work, or any other device thereon, to prevent counterfeiting, and, as it has never been held necessary to set these out in the indictment, we think the same rule should apply to the figures in question. See Whart. Crim. Pl. and Pr., § 167; *State v. Flye*, 26 Me. 312; 1 Whart. Crim. Law, § 731.

It is further claimed that the draft introduced, having been originally a genuine one, and the forgery consisting of an alteration and not of an original false making, the indictment did not sufficiently state the facts to warrant proof of such alteration. We cannot agree with this contention. The offense of forgery under our statute may consist in the uttering of a forged instrument. The draft set out, if altered from twenty-five dollars to twenty-five hundred dollars, was as much a forged instrument as though the signature of the maker had been falsely written thereto; and we see no more reason for alleging that the draft was made a forged one by a material alteration thereof, than there would be in a proper case in stating that the forged writing was made such by the false signing of the same. In either case we think the facts are sufficiently stated when, in addition to the other averments contained in this indictment, the instrument alleged to have been

forged is set out in full, and that under such indictment the forgery of the instrument may be shown as well by proof of a material alteration as by proof of an original false making. Archb. Crim. Pl. and Pr., § 1569; 1 Whart. Crim. Law, § 735; 2 Bish. Crim. Law, § 535; *State v. Flye, supra.*

The juror McRedmond having stated that he had impressions as to the merits of the cause, was asked by counsel for defendant whether or not such impressions were favorable to defendant. The answer of the juror was excluded, and we think such exclusion was correct. That such a question would have been improper under the old rule as to the examination of jurors is conceded. It is claimed, however, that the statute, which provides that opinions shall not disqualify if the court finds certain facts, has changed the rule, and several authorities are cited which sustain this proposition. We, however, are not well enough satisfied with the reasoning of these cases to justify us in reversing the long-standing practice of the courts of this territory and state. And we think that it is not necessary to add another to the numerous side issues that have to be examined in the trial of a cause.

The testimony elicited from the witness Morrisett was called for by the course of the defense in calling out the conversation as to which he testified, and a part of the conversation being in, the jury were entitled to the whole of it; and on principle, it is immaterial which one of the parties to the conversation is called to prove it.

The instructions were voluminous, and defendant alleges error as to several parts of the same. That part of the instructions most relied upon by defendant as ground for reversal, and which we think most likely to have been prejudicial to defendant, is as follows:

"You are to consider the testimony in regard to all these different writings that have been offered here as simply a circumstance, which you are to judge of in the light of your

own experience as business men and as men of affairs, for whatever weight you consider it entitled to as being decisive or otherwise in this case. The mere uttering of a forged instrument is of itself a circumstance from which knowledge of its falsity may be presumed. I mean by that, if you find from the testimony that this particular draft described in the indictment was forged, that is, falsified, and that it was uttered, that is, passed, by the defendant, you have got a right to presume from these facts that he knew that it was forged at the time of passing it; but that presumption is not conclusive, it is not binding as against other testimony in the case. If these facts stand alone, without being met by other testimony in the case, you could rest upon that presumption; but, as I have said, it is not conclusive. It is open to the defendant to contradict or explain the fact of his having guilty knowledge."

We shall examine only this one, as our reasoning as to this will apply with greater force to the other instructions given. If the above quoted instruction stood alone it might be open to objection, as, thus construed, it is possible that the jury would have been justified in believing that a *prima facie* case having been made out by the prosecution they could only look to the defendant's testimony to rebut the case so made by the prosecution; but when this instruction is examined in the light of all the others given, we are not satisfied that the jury could have been misled by it. The instruction, taken as a whole, we think fairly states the law applicable to the evidence introduced at the trial. It is doubtless true that there are isolated sentences in several parts of the charge which in themselves are objectionable, and it is probable that the instructions taken as a whole intimated to the jury the opinion of the trial judge as to the value of some portions of the evidence, yet as it clearly and fully gave the jury to understand that the facts were exclusively for them, we do not think that such intimation alone would justify a reversal of the judgment.

The instruction above quoted, when interpreted in the light of all, as above stated, could mean nothing more than

that if the jury were satisfied that defendant had uttered the draft in question, and that it was forged as claimed, such utterance would be a circumstance in the case from which the jury would be warranted in finding a guilty knowledge, if, in fact, their minds were convinced beyond a reasonable doubt by such circumstance, and that being so convinced they would be warranted in convicting the defendant, provided that, when they examined such circumstance in the light of all the proofs, such conviction beyond a reasonable doubt still existed in their minds; and thus construed, we think it correctly stated the law; for while it is true that the cases are not numerous where the bare possession of a single forged instrument has been held to warrant a presumption of guilty knowledge, yet the cases are numerous where the possession of three or four bank bills has been held sufficient to justify such presumption, and it is clear to any person of common understanding that it would be more reasonable to require an explanation of the possession of a single draft like the one in question than it would of three or four or even ten bank bills of ordinary size; for while even a prudent man who handles large sums of money might be utterly unable to show where any one of ten, or even an hundred, five-dollar bills came from, there are very few men whose transactions are such that a $2,500.00 draft passes through their hands without their being able to show conclusively from whom they received it.

The instructions as to what constitutes a reasonable doubt were more favorable to defendant than the law required, and from the whole case, as presented by the record, we are of the opinion that the defendant had a fair trial, and that no substantial error to his prejudice has been made to appear.

The judgment and sentence of the lower court must be affirmed, and the cause remanded for further proceedings.

ANDERS, C. J., and SCOTT, STILES and DUNBAR, JJ., concur.