Bissell, P. J.
John Graybehl had judgment on the 16th day of October, 1893, against his wife Emily in a replevin suit over a lot of household stuff. The judgment was for the return, or in lieu thereof the payment of $300 and costs. This somewhat singular condition of affairs grew out of another litigation between them, wherein Emily brought an action for divorce against John, praying alimony, in which latter suit John had answered in denial and with a countercharge of adultery. The replevin suit seems to have been brought very much on the allopathic theory of a counter irritant. All this was in 1893. Matters dragged along for quite a while in the county court. It finally went to judgment and was appealed to the district court. On the appeal a bond was executed by Emily Graybehl, N. Q. Tanquary, her attorney, and F. E. Carringer. In 1896, the replevin judgment was assigned to Howard & Howard, who had been attorneys for Graybehl, and probably still were, and presumably, and as it is alleged, for a valuable' consideration the bond itself was transferred in 1896. Of this assignment of the judgment to Howard & Howard the record clearly shows that Mrs. Graybehl and Tanquary had-notice. Either a copy of the assignment or a notice of it was served on Mrs. Graybehl where she was at work, and information about it was given to Tanquary. When the divorce case was about to be reached for trial and Graybehl’s attorneys were commencing to hunt up evidence against *82 Mrs. Graybehl to support their countercharge, negotiations were entered into between Howard & Howard and Tanquary. There is a wide variance between the lawyers who were both witnesses as to what occurred. Tanquary asserting on one side that they came to him and were frequently in his office, and on the other side, that the propositions came to them from Tanquary, and that he was the one who proposed that they should make some adjustment concerning this countercharge of adultery. Tanquary asserted that the agreement was the claim for permanent alimony in the divorce suit should be abandoned, and as a consideration therefor Mr. Graybehl should either transfer or satisfy this judgment in’ replevin and Mrs. Graybehl should keep the goods. The record discloses that the goods were taken under the writ, but were in the possession of Mrs. Graybehl, or rather in Tanquary’s possession in one of his houses for a long time, though he states that hé had returned them to her before these negotiations begun. However this may be, the point in dispute between the' parties is with reference to the consideration of the stipulation. This stipulation was in the divorce case, and is substantially that the matter of alimony having been fully adjusted, it is agreed that no proof in relation to it shall be given on the trial, and no alimony should be asked. This was signed by Tanquary, attorney for the plaintiff, and by Henry Howard, Jr., as attorney for the defendant. It will be observed that it contains nothing about the satisfaction of the judgment or the dismissal of the appeal or the suit, or the retention of the goods by Mrs. Graybehl. In fact it is utterly silent except on the one question of the waiver of any claim for alimony. The Howards insist that this was on an agreement that they should abandon and make no proof about their countercharge of adultery. They insist that the paper was signed in their office, and not in Tanquary’s. We must concede the weight of the testimony is undoubtedly with them, both as to the circumstances of the negotiation and the consideration on which the stipulation was based. It is quite impossible for us to under *83 stand how it could happen that a stipulation abandoning the claim for alimony should be signed by the parties, based wholly on the consideration of the satisfaction of a judgment then in esse, and the retention of the goods which were the subject-matter of the suit by the judgment defendant agreed upon, and it contain nothing about it. If the agreement had been made between two laymen, this might possibly be true. Entered into between counsel, who are supposed to be learned in the law, and to know what is necessary to preserve and protect the rights of the parties, it is quite past our comprehension. The only reasonable conclusion about it, is that the Howards’ contention is right* and that this waiver of a claim for alimony was really stipulated in order to avoid and get rid of the countercharge of adultery, and the necessity either to attempt to make proof to the contrary, or get into a record matters which should reflect upon the personal character and reputation of Tanquary’s client. If we were compelled to decide the question, we should undoubtedly hold that the contention that the stipulation was based on this consideration was not supported by the testimony.
We do not however necessarily base our judgment on this matter. There is a legal proposition from which there is no escape, and which must reverse this judgment. There was no plea or defense interposed to this action on the-bond, except a recital of these facts respecting the stipulation. The matter was pleaded as an agreement between John Graybehl and Emily Graybehl, and to the point that these parties agreed that in lieu of alimony Emily should retain possession and control of the property, and that the judgment should be satisfied of record. As pleaded, this was an agreement between the respective parties to the two different suits, the divorce and the replevin suit. At that time the judgment was not owned by John Graybehl, nor had he any interest in it. It may be, though we do not undertake to say, had the record disclosed the assignment to the Howards to have been without consideration, and that John still had an interest, the agreement might have been binding, and once estab *84 lished or found to have been made, would operate as a bar to the suit. Howard, to whom title in the bond and judgment, now rests, could only maintain his suit and recover against the sureties on the theory of an ownership for a valuable consideration. We are not satisfactorily advised what the fact may be. As we before said, it was pleaded as an agreement between the parties. The evidence clearly demonstrates that there had been a transfer of the judgment to Howard long prior to the making of the stipulation to the knowledge of both Mrs. Graybehl and her attorney, Tanquary. Manifestly, it was quite impossible for the two parties to the suit to make any agreement for the satisfaction of the judgment and the dismissal of the action to the prejudice of the assignee of the judgment, they being advised of the situation of the title. It may be quite true Mrs. Graybehl would have a remedy, and possibly the bondsmen might have a remedy against Graybehl for a breach of the agreement, the agreement having been found to have been made. This remedy, however, does not consist of a defense to the action on the bond which belongs to somebody else, but in an action for a breach of his agreement to protect Mrs. Graybehl in the possession of the property. We are not prepared to say, if the plea had been in different shape, and it had been pleaded by way of estoppel against the Howards who owned the judgment, and it had been charged that they were the owners and made the agreement intending to bind both themselves and Mr. Graybehl, or that they misled these parties to their prejudice because of their procedure, and committed a fraud on-Mrs. Graybehl, still owning and asserting their title to the judgment, such a plea might not be available. The matter was not so pleaded, but was set up as an agreement between John and Emily.
We likewise see very grave difficulties about setting aside a judgment on this kind of testimony. A judgment is a very grave thing, and even in equity, which is the only jurisdiction having power to cancel judgments, which are solemn adjudications of record, it would not be vacated or set aside on parol testimony unless it is exceedingly clear, satisfactory *85 and convincing. The testimony in this case reaches no such level and in fact is almost, as we look at it, entirely overcome by the terms of the stipulation which make no mention of the consideration, to wit, the satisfaction of the judgment and the transfer of the title to the property.
Even though by construction the answer might be taken to state an ample consideration, or to set up matters which embrace the subject-matter of a plea in estoppel, we are quite of the opinion that without some element of fraud or deceit, the Howards would not be estopped so long as Mrs. Graybehl and her attorney, Tanquary, had full knowledge of the situation of the title, unless there was some sort of a consideration moving between Mrs. Graybehl and the Howards. This, of course, is on the hypothesis that the Howards held title for a valuable consideration, either money paid, or property turned over, or services rendered. Holding good title on an adequate consideration which we assume under the proof there must be some contract or stipulation to bar them from asserting the judgment. We are compelled.to express our opinion in this general fashion because the negotiations were had between two attorneys. We therefore find it exceedingly difficult to imagine that Mr. Tanquary could have been deceived or misled about the matter. He knew or ought to have known that Graybehl was in no situation or condition to negotiate for the satisfaction of the judgment while Howard held and owned it. He had no right to assume that John Graybehl had the power to make any stipulation about the judgment. He could hardly claim to haye been deceived or misled, and if he took chances that- this ’would be operative as an estoppel, he cannot be heard to complain because he is now called on to respond and pay the penalty of the bond to which he subscribed.'
Taking the whole case together as-it stands, we do not believe that the testimony warranted the judgment, or that it can be upheld upon any known and well established principle of law, and it will, therefore, be reversed and sent back for further proceedings in conformity with this opinion.

Reversed.