561 P.2d 380

**Norma B. Cheney LYNCH,
Plaintiff-Respondent,**

v.

**Ross CHENEY, Defendant-Appellant.**

**No. 11910.**

Supreme Court of Idaho.

Feb. 25, 1977.

Rehearing Denied April 1, 1977.

Gleason D. Anderson, Annest & Anderson, Burley, for defendant-appellant.

Kenneth L. Pedersen, Parsons, Smith & Pedersen, Burley, for plaintiff-respondent.

BAKES, Justice.

Plaintiff respondent Norma B. Cheney Lynch brought this action in April, 1974, in Cassia County to establish as a foreign judgment in this state the amount of arrearages due under a modified California child support order. The district court ruled that the father, defendant appellant Ross Cheney, had not sustained the burden of proving his defense that Norma Cheney Lynch had orally agreed to cancel the arrearages and awarded her $5,350.00 in unpaid support, plus $1,382.64 interest. We affirm.

Lynch and Cheney were married in 1952, and were divorced in California in 1969. Incorporated into the divorce decree was a marital property and support settlement agreement entered into by the parties which provided that the father, Ross Cheney, would pay to the mother, Norma Cheney, $125.00 per month for each of their two children beginning March 1, 1969. Ross Cheney subsequently left the state of California and presently resides in Idaho. On December 1, 1970, an order was entered by the district court of Canyon County ordering Ross Cheney to thereafter pay the amount of $50.00 per month per child. This order, which was apparently a Reciprocal Enforcement of Support Order made pursuant to I.C. §§ 7–1048 *et seq.*, made no

mention of the California decree or the collection of any arrearages under it. At that time Ross Cheney was already at least $3,000.00 in arrears under the original California decree. The December 1, 1970, order of the district court in Canyon County dealt only prospectively with Ross Cheney's support obligation, which it set at $50.00 per child per month.

At the time of the divorce in 1969, Norma was given custody of the children, Craig, born in 1954, and Carla, born in 1961, and they remained with her throughout 1969, 1970 and the first half of 1971. In the summer of 1971, both children spent about 2½ months with their father. In early 1972, Norma was having problems in her second marriage and she called Ross and asked him to take Carla, who was then 11, for an indefinite period. Carla spent approximately nine months with her father, who was then living in Baker, Oregon. She returned to her mother in late 1972 and has remained with her since. Also in 1972, the parties agreed that Craig, who was then 18, would go to Oregon and attend college in nearby LaGrande, with his father's support. Craig spent about seven months in 1972 with or near his father, and his college was financed by Ross Cheney. Craig remained in Oregon in 1973, attending school with his father's financial assistance for a period of 9½ months. He spent vacations and the summer with his mother in California. Craig ceased his educational efforts in early 1974 and returned to California in May of that year. After 1½ months of unemployment, he obtained permanent employment although he continued to receive room and board from his mother.

At trial, Ross contended that he and Norma had orally agreed to a settlement of his past due support obligation at the time that he agreed to assume the financial burden of Craig's education and to take Carla for a year. This agreement, he claimed, was reached by a telephone conversation in March or April of 1972. Ross testified that Norma agreed that if he would provide for Craig's education, and take Carla, she would forgive all past due child support.

Norma Cheney Lynch emphatically denied the existence of such an agreement, stating that she never agreed to cancel the accrued unpaid support. Although Norma admittedly made little effort to collect child support from Ross between 1972 and the institution of this suit in 1974, she explained her behavior by stating that she was experiencing financial difficulties during that period and was unable to afford an attorney. In addition, Craig Cheney testified that, as he traveled back and forth between Oregon and California during those two years, he often acted as messenger between his parents. He stated that he had prevailed upon his mother not to press his father for the support payments since "for the first time in my life" he was receiving his father's aid and if his father terminated the financial assistance, he could not get through college. During 1972 and 1973, Ross sent no support payments to Norma. He began sending $50.00 a month for Carla's support after this suit was instituted in 1974.

In a memorandum decision which also served as findings of fact and conclusions of law under I.R.C.P. 52(a), the trial court concluded that there was not "clear and satisfactory" evidence that an agreement to forgive all past due support payments existed. The court stated:

"In 1972—March or April or thereabouts—by telephone conversation the parties arranged for Carla to go with her father for an indefinite time, and for Craig also to go with his father in furtherance of his higher education. The parties agreed that while Carla was with her father he would assume her direct support, and while Craig was with him he would assume his higher education and support. The evidence is not clear and satisfactory, as defendant claims, that a part of the consideration for this agreement was that all past due support payments due the plaintiff would be forgiven, although the evidence tends to show that after the children went with the defendant the plaintiff virtually ceased all efforts to collect back support until April, 1974 when she filed this action. However, the evidence also indicates the

reason to be lack of funds to hire a lawyer and the efforts of Craig to hold off his mother so as not to jeopardize his source of funds for higher education. The evidence of withholding collection action is consistent with a forgiveness of back support, but it is also consistent with the reasons just given. Therefore, as to this part of the alleged agreement, the evidence is not clear and satisfactory." Clk.Tr., p. 32.

In its accounting of accrued unpaid child support, the court did not assess Ross Cheney for support each month that either or both the children were with him (Craig was considered with his father while he attended schools in Oregon). It concluded that Craig had become permanently self supporting after he returned to California and did not assess Ross for any support for Craig after June, 1974. The court awarded Norma Cheney Lynch $5,350.00 in unpaid support plus $1,382.64 in interest.

Appellant Ross Cheney asserts two basic contentions in support of his primary claim that the trial court should have reduced, if not completely forgiven, his past due support obligations: (1) that the parties by oral contract agreed that if Ross took Carla for one year and assumed responsibility for Craig's support and college education, Norma would forgive all past due support; and (2) that the trial court in exercising its broad equity powers could have employed the equitable doctrines of *laches*, estoppel and setoff, and itself reduced the support arrearages.

In his initial assignments of error, Ross Cheney contends that the trial court should have granted his motion, submitted after the memorandum decision was filed, to

amend the pleadings to conform with the proof. In his answer to the complaint, Ross Cheney entered a general denial of his liability, raising no affirmative defenses. In his motion to amend under Rule 15(b),[1] he raised the defenses of the alleged agreement, *laches*, estoppel, and offset. The motion was denied.

■ A motion to amend pleadings to conform to the evidence under Rule 15(b) should be granted "when issues not raised by the pleadings are tried by express or implied consent of the parties, . . ." When confronted with a Rule 15(b) motion, the trial court must determine whether the issue was in fact tried with the express or implied consent of the parties. Under the language of the rule, the formality of an amendment of the pleadings is not necessary if the court concludes that the issues were in fact tried. In discussing the comparable federal rule, Wright & Miller have stated:

"The decision whether the issue has been tried by express or implied consent is a matter of the trial court's discretion and will not be reversed except upon a showing of abuse. But once the court determines that the issue has been litigated with the consent of the parties, it has no discretion to deny the motion to amend . . . if the court is sitting without a jury, the judge must make a finding on the issue as required by Rule 52." 6 Wright & Miller, Federal Practice and Procedure, § 1493, pp. 469–470.

■ At the trial, the defendant Ross Cheney clearly raised the defense of an agreement to forgive support arrearages, and the plaintiff Norma Cheney Lynch

1. "RULE 15(b). *AMENDMENTS TO CONFORM TO THE EVIDENCE.*—When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

presented rebuttal testimony denying the existence of an agreement. Consequently, despite the fact that the defendant's answer did not raise this defense, nor did he move to amend the pleadings during trial, the trial court was bound to make a finding on that question. In its memorandum opinion the trial court specifically dealt with this issue, ruling that the defendant failed to establish "clear and satisfactory" evidence of an agreement. Since the court obviously concluded that the issue of an agreement was tried with the implied consent of the parties, it should have granted the defendant's motion to amend as to that issue, but its failure to do so in this case was not prejudicial error because the court made its finding and conclusion on that question, albeit adversely to appellant.

 Regarding the remaining three affirmative defenses raised in the motion to amend the pleadings to conform with the evidence, the trial court's denial of the motion and its refusal to enter findings and conclusions on these issues indicates that it had concluded that these defenses were not tried by express or implied consent of the parties. We emphasize that the determination whether an issue has been tried with the consent of the parties is a matter for the trial court's discretion, 6 Wright & Miller, *supra* ; *Vonbergen v. Kuykendall,* 240 Or. 191, 400 P.2d 553 (1965). The record here is devoid of any indication that the defendant intended to assert these equitable defenses. While certain evidence which was admitted as relevant to the issue of the existence of an agreement may also have been relevant to the issues of estoppel, *laches* and setoff, the crucial decision for the

trial court is whether the parties actually tried these defenses. As Wright & Miller points out:

". . . when the evidence that is claimed to show that an issue was tried by consent is relevant to an issue already in the case, as well as to the one that is the subject matter of the amendment, and there was no indication at trial that the party who introduced the evidence was seeking to raise a new issue, the pleadings will not be deemed amended under the first portion of Rule 15(b). The reasoning behind this view is sound since if evidence is introduced to support basic issues that already have been pleaded, the opposing party may not be conscious of its relevance to issues not raised by the pleadings unless that fact is specifically brought to his attention." 6 Wright & Miller, Federal Practice & Procedure, Civil, § 1493, pp. 466–467.

We hold that the denial of appellant Ross Cheney's motion to amend the pleadings to conform with the proof as to these additional defenses was not error.

 Appellant Ross Cheney's next assignments of error raise the question of what standard of proof should have been imposed by the trial court on the issue of his defense that Norma Cheney Lynch had agreed to forgive the child support arrearages.[2] The trial court required that the defendant present clear and satisfactory evidence of the agreement and concluded that the defendant had failed to meet this burden. Cheney argues that the burden thus imposed was too stringent and that the applicable test should have been that proof of an agreement to forgive arrearages be

---

**2.** This agreement is alleged to have taken place in March, 1972, at which time Ross was approximately $4,550.00 in arrears under the original and modified support orders (using the trial court's calculations, Clk.Tr., pp. 33–34). His testimony is that under the agreement this amount would be forgiven if he would support Craig's college education. If such an agreement had been found to exist, it would have been valid and enforceable, *Anderson v. Anderson,* 89 Idaho 551, 407 P.2d 304 (1965). However, Ross apparently also contended that this agreement provided that he would no longer

have a support obligation toward Carla, which was why he ceased making any payments toward Carla's support. While an agreement to forgive child support *arrearages* would be enforceable because that obligation was owed to Norma Cheney Lynch as reimbursement for amounts she had presumably spent on behalf of the children, any agreement attempting to absolve the non-custodial parent *prospectively* of his support obligation to his child would be another matter. *Application of Martin,* 76 Idaho 179, 279 P.2d 873 (1955); *Keyes v. Keyes,* 51 Idaho 670, 9 P.2d 804 (1932).

established by a mere preponderance of the evidence, and therefore this case must be remanded to the trial court for a reconsideration of the question of whether an agreement existed under a preponderance of the evidence standard. We agree with the trial court that proof of an oral agreement to forgive accrued unpaid child support must be established by something more than a preponderance of the evidence, and hold that it was not error for the trial court to impose a clear and satisfactory standard.

In *Anderson v. Anderson*, 89 Idaho 551, 407 P.2d 304 (1965), this Court upheld and enforced an agreement between the parents in which the custodial parent forgave child support arrearages. Since there was no dispute in that case that such an agreement was made, it was not necessary for this Court to determine the applicable standard of proof of such agreement. We note, however, that while the agreement had been arrived at orally, by telephone, the custodial parent executed an acknowledgment that she had released the non-custodial parent of his obligation for accrued unpaid support.

While this Court has not previously addressed the question of what standard of proof is necessary to prove a claim of oral compromise of a judgment, we have required a clear and convincing, or a clear and satisfactory standard of proof in analogous circumstances such as the oral modification of a written contract, *Prairie Development Co., Ltd. v. Leiberg*, 15 Idaho 379, 98 P. 616 (1908) ("clear and satisfactory"), and an oral claim of ownership of real property contrary to title of record, *Ballard v. Lava Hot Springs Resort, Inc.*, 97 Idaho 572, 548 P.2d 72 (1976) ("clear, satisfactory and convincing"). The only case directly in point which the combined research of the Court and counsel was able to discover is *Howard v. Graybehl*, 16 Colo.App. 80, 63 P. 953 (1901), a suit to enforce a money judgment in which the judgment debtor's defense that the parties had orally agreed to a compromise of the claim was rejected by the Colorado Court of Appeals. That court observed:

"A judgment is a very grave thing, and even in equity, which is the only jurisdiction having power to cancel judgments, which are solemn adjudication of record, it would not be vacated or set aside on parol testimony unless it is exceedingly clear, satisfactory, and convincing." 63 P. at 955.

█ The rationale for a "clear and convincing" evidentiary standard rests in the value the law places on the integrity of a formal writing. Therefore, we adopt the standard of proof in the *Prairie Development Co.* and *Ballard* cases and hold that proof of an oral agreement to cancel a judgment debt must be established by clear and convincing evidence.[3] The record supports the ruling of the trial court that the defendant Ross Cheney failed to meet that burden.

█ In a related assignment of error, Ross Cheney argues that the trial court should not have excluded defendant's exhibits J, K, and L which he claims were relevant to proof of an agreement to forego arrearages. These exhibits were letters received by Ross from his sister and family attorneys concerning the settlement of his father's estate. It was contended that Norma Cheney Lynch knew Ross Cheney was about to receive a small inheritance, and that the expenditure of the inheritance money on Craig Cheney's education was to have been consideration for forgiveness of unpaid support. Norma objected to the admission of the exhibits on the ground that they were hearsay and irrelevant. Ross Cheney stated that they were not offered to prove the truth of the contents of the letters, but merely to show the fact that discussions concerning the disposition of the inheritance took place. The trial court ruled that to the extent that the letters were hearsay they were not admissible under any exception and that any non-hearsay value they had was not apparent at that

---

**3.** While our prior decisions have variously used "clear and satisfactory", "clear, satisfactory and convincing" and "clear and convincing" to denote a standard of proof higher than a preponderance of the evidence, we see no articulable difference among them.

time. The defendant ceased that line of inquiry and never re-offered the three exhibits.

These letters were clearly hearsay, and as such were inadmissible as proof of the truth of their contents unless their proponents could establish that they were admissible under an exception to the hearsay rule. To the extent that the letters were offered for non-hearsay purposes, i. e., to prove that discussions between Ross Cheney and the authors of these letters took place concerning use of the inheritance money, they were admissible if proof of such discussions had been relevant. Bell, Handbook of Evidence for the Idaho Lawyer, 2d ed., pp. 128–129. However, if these letters were introduced to show that discussions were had between Ross Cheney and Norma Cheney Lynch, the contents of the letters would necessarily be at issue and thus they would have been offered for hearsay purposes. Consequently, we agree with the trial court that the defendant had not sufficiently established a foundation for the non-hearsay use of these letters and, at that point in the proceedings, they were inadmissible.

Having determined that no error occurred in the trial court's determination that there was no agreement between the parties that Norma Cheney Lynch would forgive the accrued unpaid child support debt, we turn next to the appellant Ross Cheney's argument that the trial court, in exercise of its equitable powers, could have itself reduced or cancelled the amount due. Specifically, Ross argues that he channelled the bulk of his inheritance toward Craig's college education and the court could have credited him for these amounts in assessing the final amount due.

Initially we note that the United States Supreme Court decision in *Sistare v. Sistare*, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910), and its progeny requires us to look to the law of California, the state which entered the divorce and child support decree, to determine if child support installments become final judgments as they accrue. If California law provides that installments become "absolute and vested"

upon becoming due, we are required under the full faith and credit clause of the United States Constitution to accord past due installments with the same degree of finality as would the California courts. The corollary to this rule is that if a California child support decree is subject to retroactive modification in that state, then it would not be a final judgment requiring full faith and credit, but we would be free to enforce the obligation as a matter of comity, see *Worthley v. Worthley*, 44 Cal.2d 465, 283 P.2d 19 (1955). Therefore, if child support installments become absolute and vested upon becoming due under California law, we must reject appellant Ross Cheney's contention that the Idaho trial court could have given him equitable relief and reduced the accrued unpaid child support debt.

California Civil Code § 4700 provides in part:

"Any order for child support may be modified or revoked as the court may deem necessary, *except as to any amount that may have accrued prior to the date of the filing of the notice of motion or order to show cause to modify or revoke.*" (Emphasis added).

The California courts have construed this provision to forbid modification of accrued unpaid child support debts. *Sanford v. Sanford*, 273 Cal.App.2d 535, 78 Cal.Rptr. 144 (1969). Since child support payments become final upon accrual under California law, Idaho courts must grant full faith and credit to the judgment debt and the trial court could not have modified the California decree retroactively. *Sistare v. Sistare*, supra; *McGregor v. McGregor*, 52 Colo. 292, 122 P. 390 (1912).

In *Simonton v. Simonton*, 33 Idaho 255, 193 P. 386 (1920), this Court cited with approval the case of *McGregor v. McGregor*, 52 Colo. 292, 122 P. 390 (1912). In *McGregor*, the Supreme Court of Colorado considered whether past due installments of child support under a California decree were modifiable. The Colorado court summarized the rule set down by the United

States Supreme Court in *Sistare v. Sistare, supra,* as follows:

"[I]f by the law of the state in which the decree for alimony was rendered the court rendering it has the authority to annul or modify the decree for alimony as to past-due installments, then the party in whose favor such decree is rendered does not have a vested right in such installments. On the other hand, if the court rendering the decree does not possess such power, then the party in whose favor such decree is rendered has a vested right in the past-due installments. The reason for the distinction is that in the one case the judgment is in no sense final, and is not absolutely enforceable, in the jurisdiction where it was pronounced, since it is subject to modification at any time by the court rendering it with respect to past-due, as well as future, installments, while, when the power to annul past-due installments does not exist, they are a debt of record as much as any other judgment for money is, and are absolutely enforceable." 122 P. at 391.

Upon examining the relevant California statutes and case law, the Colorado court concluded:

"[T]he power of the courts of that state is limited to modifications of future installments for alimony, or the support of minor children, and does not extend to those past due. That is to say, the power to modify such installments is prospective, and not retroactive. (Citations omitted). We therefore conclude that the judgment in favor of plaintiff for past-due installments as rendered by the California court was absolutely enforceable, and hence protected by the full faith and credit clause of the Constitution, to which we have referred." 122 P. at 391.

This Court cited *McGregor* in the *Simonton* opinion as authority for the California rule regarding finality of accrued support payments.[4] We conclude that under California law the past due payments of child support were not modifiable, and therefore the district court could not have entertained appellant's request to exercise its equitable power to excuse appellant from those past due amounts.[5]

In his final assignment of error, appellant Ross Cheney contends that the memorandum decision issued by the trial court does not set forth the court's findings of fact and conclusions of law with specificity as required by I.R.C.P. 52(a). Because of its failure to do so, he argues, it is impossible for this Court to obtain a clear understanding of the basis of its decision. *In re Estate of Stibor,* 96 Idaho 162, 525 P.2d 357 (1974); *Nenoff v. Culligan Soft Water,* 95 Idaho 834, 521 P.2d 658 (1974). Rule 52(a) provides that "[i]f an opinion or memorandum decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein." We have reviewed the memorandum opinion in light of the issues presented on appeal and we conclude that any lack of specificity therein is not prejudicial. *Glenn Dale Ranches, Inc. v. Shaub,* 94 Idaho 585, 494 P.2d 1029 (1972); *Merrill v. Merrill,* 83 Idaho 306, 362 P.2d 887 (1961).

Affirmed. Costs to respondent.

McFADDEN, C. J., DONALDSON, J., and HAGAN, District Judge, concur.

SHEPARD, J., concurs in result.

4. California subsequently codified its case law rule in California Civil Code § 4700, which is set out in part, *ante* at 386.

5. We are not here concerned with the question of whether or not a father should be relieved of child support obligations during that period of time in which he has actual custody of the children, inasmuch as the trial court did not include any time in which the children were in the custody of their father in computing the amount of the judgment debt. The respondent has not raised that issue on appeal and appellant is not contesting here the computation of the amount of the judgment entered, but only that he should have been relieved from all or an "equitable" amount of it, based on the alleged agreement to forgive or, alternatively, upon the exercise of the trial court's equitable powers. *See* Annot. 2 A.L.R.2d 832, and *cf. Nielsen v. Nielsen,* 93 Idaho 419, 462 P.2d 512 (1969).