736 P.2d 1301

**IDS LIFE INSURANCE COMPANY, a Minnesota Corporation; and Investors Diversified Services, Inc., a Delaware Corporation, Plaintiffs,**

v.

**ESTATE OF Timothy P. GROSHONG, Deceased; Joanne V. Groshong: Ruby Groshong, and Shane Groshong and Amy Groshong, the minor children of Timothy P. Groshong and Ruby Groshong, Defendants.**

**and**

**Joanne V. GROSHONG, Cross-Claimant-Respondent,**

v.

**ESTATE OF Timothy P. GROSHONG, Deceased; Ruby Groshong; and Shane Groshong and Amy Groshong, the minor children of Timothy P. Groshong and Ruby Groshong, Cross-Defendants-Appellants.**

**and**

**Joanne V. GROSHONG, Counter claimant,**

v.

**IDS LIFE INSURANCE COMPANY, a Minnesota Corporation; and Investors Diversified Services, Inc., a Delaware Corporation, Counter defendants.**

**No. 16386.**

Supreme Court of Idaho.

April 1, 1987.

Rehearing Denied May 18, 1987.

---

848

David D. Goss, Risch, Insinger & Salladay, Boise, for appellants.

Donald Lojek, Lojek & Hall, Boise, for respondent.

HUNTLEY, Justice.

In September 1970, Timothy Groshong married Ruby Groshong in the state of Oregon. In 1975, Mr. Groshong began work with IDS Life Insurance Company. As an employee of IDS, Mr. Groshong entered into a contract with his employer for a career distributor's retirement plan, which designated his wife Ruby as the beneficiary under the plan.

In June of 1982, the Groshong family moved to Boise where Mr. Groshong continued to be employed by IDS. In August 1982, he entered into another contract with IDS for a manger's retirement plan and trust agreement, and again named his wife as the beneficiary. Both of the plans included death benefits.

In March, 1983, Timothy and Ruby Groshong were divorced. Shortly after the divorce, Timothy married his second wife, Joanne. On June 23, 1983, a week after his marriage, Mr. Groshong executed two IDS change of beneficiary forms in the presence of Joanne Groshong and Max Buffi, an employee of IDS. These forms named Joanne Groshong as the sole beneficiary under both retirement plans. Both Mr. Buffi and Joanne Groshong testified at trial that they saw Timothy Groshong change the beneficiary forms and leave them on his desk.

On July 3, 1983, Mr. Groshong died in Sun Valley after participating in a polo match. The change of beneficiary forms executed by Mr. Groshong were not received at the IDS home office, nor could they be found on Mr. Groshong's desk. Ruby Groshong claimed to be the legal beneficiary to both of these retirement plans. Joanne Groshong claimed that she had been made the new beneficiary when her husband filled out the change of beneficiary forms.

The retirement plan documents provided that no change of beneficiary would be effective until and unless the change of beneficiary forms were received by the company.

Faced with competing claims to the benefits, IDS brought an action interpleading

all possible claimants. The trial court, sitting without a jury, found that Mr. Groshong had intended to change his beneficiary under these retirement plans from his former wife, Ruby, to his present wife, Joanne. The trial court concluded that Mr. Groshong had substantially complied with the requirements to change the beneficiary of his retirement plans. Accordingly, the court awarded the proceeds to Joanne, less an adjustment for Ruby's community interest in the plans. Ruby Groshong appeals.

The issue before this Court is whether the trial court erred in ruling that the beneficiary was effectively changed by execution of the forms before witnesses, despite the fact the forms were not received by the head office of the insurance company, which receipt was required under the terms of the plan documents.

The view taken by the majority of courts is that a change of beneficiary can be effected without complete compliance with the provisions of the policy regarding notice and endorsement. The courts upholding this view accept substantial compliance as a sufficient standard for determining whether a valid change of beneficiary has been effected. *Woodman Accident and Life Co. v. Puricelli,* 669 S.W.2d 64 (Mo. App.1984); *Manhattan Life Insurance Co. v. Barnes,* 462 F.2d 629 (9th Cir.1972); *Witt v. Citizens National Bank,* 440 S.W.2d 112 (Tex.Cir.App.1969); *Republic National Life Insurance Co. v. Sackman,* 324 F.2d 756 (6th Cir.1963); *Bowser v. Bowser,* 202 Okl. 97, 211 P.2d 517 (1949); *Sun Life Assurance Co. v. Sutter,* 1 Wash.2d 285, 95 P.2d 1014 (1939). The philosophy behind this view is that the insured's right to change beneficiaries should be given preference over procedural technicalities. *Sun Life Assurance Co. v. Sutter,* 1 Wash. 285, 95 P.2d 1014 (1939).

■ The test to establish whether substantial compliance has been satisfied has two prongs: There must be evidence that (1) the insured had determined to change the beneficiary, and (2) that the insured had done everything to the best of his ability to effect the change. *Gibson v. Henderson,* 459 So.2d 845, 849 (Ala.1984);

*United Services Life Insurance Co. v. Moss,* 303 F.Supp. 72, 75 (W.Dist.Va.1969); *Tomaneng v. Reeves,* 180 F.2d 208, 209 (6th Cir.1950); *Mitchell v. United States,* 165 F.2d 758, 760 (5th Cir.1948).

■ The first prong requires discerning the intent of the insured to change the beneficiary. In *Moss, supra,* 303 F.Supp. at 76, the insured had filled out and signed the change of beneficiary forms, but kept the forms in his possession for two years without forwarding them to the insurance company, despite several requests from the insurance company that the forms be forwarded. The court concluded that the insured's retention of the forms for two years demonstrated that he had not definitely determined to effectuate a change.

In *Tomaneng, supra,* 180 F.2d at 209, the insured requested the insurance company to send him a change of beneficiary form so that he could remove his wife's name from the policy and replace it with his sister's name. The forms were never signed and were retained in his possession at the time of his death. The court noted that the deceased had changed beneficiaries on two previous occasions and understood the required procedure. Hence, the failure of the insured to sign the forms and his retention of the forms for nearly four months persuaded the court that the insured was not definite in his determination to change beneficiaries.

In *Gibson, supra,* 459 So.2d at 846, the insured was familiar with the insurance business, but still retained signed and completed forms for fifteen months before his death and did not instruct those under his direction to forward the forms to the insurance company. The court ruled that the insured had not manifested his intent to change the beneficiary.

In *Mitchell, supra,* 165 F.2d at 760, the insured's widow testified that her husband had signed and filled out a government insurance report form to change beneficiaries and sent it to the war department. The original form, however, was lost by the government, but the deceased's wife had a copy. Although the government insurance office had no record of the change of bene-

ficiary, the court viewed the wife's testimony, the testimony of the deceased's mother, who stated she heard conversations regarding the change of beneficiary, and the copy of the government insurance report form as sufficient evidence of the insured's determination to change beneficiary. The court added further that "[t]hese insurance cases are difficult of decision. Each must be decided in the light of its own facts. The strict law is that a change of beneficiary must be made in writing and in proper form. Where this has not been done, the courts will brush aside technicalities to give effect to the intention of the insured." 165 F.2d at 761.

Several factors have been viewed by the courts as providing sufficient foundation to conclude that the insured had determined to change the beneficiary. Among those factors is the completeness with which the insured filled out the forms. In the instant action, we have the eyewitness account of Joanne Groshong and Max Buffi, an employee of the insurance agency, that the forms were completed and signed.

Further, the courts have also given weight to the testimony of witnesses which establish that the insured intended to make a change of beneficiary. Again, the testimony of Joanne Groshong and Max Buffi establish that Timothy Groshong intended to name a new beneficiary.

Where the change of beneficiary form has been completed and signed, but not forwarded to the insurance company, the courts have weighed the amount of time between the execution of the form and the date of death. If there is a lengthy period of time between the execution of the forms and the death, courts have concluded that the insured had second thoughts and did not intend to make the change. On June 23, 1983, Mr. Groshong completed the forms and left them on his desk and left town two days later. The record does not reveal that Mr. Groshong ever again returned to his office. The record indicates that it was customary for Mr. Groshong's secretary to take the change of beneficiary forms of clients from his desk and mail them to the home office. However, the forms were never found. There is nothing in the record to indicate that Mr. Groshong had changed his mind. It is likely that if he had changed his mind he would have telephoned his secretary during the intervening days and instructed her to destroy the documents. Therefore, the trial court was justified in finding that the insured had determined to change the beneficiary.

The second prong of the test is whether the insured had done everything to the best of his ability to effect the change. A number of courts have taken the view that a valid change of beneficiary is effected where the insured made a signed request for change of beneficiary and was in the possession of the change of beneficiary forms, but died before he had an opportunity to mail the documents to the insurer. 5 G. Couch, *Couch on Insurance 2d*, § 28:76 (2d Ed.1984).

In *Skamoricus v. Konagiskie*, 318 Pa. 128, 177 A. 809, 810 (Pa.1935), the insured executed a change of beneficiary form which was witnessed by an employee of the insurance company, and the insured took the form to a notary to have his signature sworn to, but the notary was not in the office. The insured left, and died the following morning while the form was still in the notary's office. Compliance with policy provisions required the insured to forward the change of beneficiary forms to the insurance company, but the court held that the insured had made every reasonable effort to effect a change. Therefore, the verdict in favor of the second beneficiary was upheld.

In *Kit v. Stecker*, 109 F.2d 281 (3d Cir. 1940), the insured filled out the form, signed it, had it witnessed by someone other than the beneficiary, but instead of delivering it to the insurance company, as the policy required, put it in the custody of the beneficiary. In view of the insured's lack of understanding that the form needed to be returned to the insurer, the court held that he had done everything that could be reasonably expected. In support of its position, the court stated:

"If there has been substantial performance, the adverse claimant cannot claim

failure to follow a ministerial requirement, or a regulation of the company, as a defense, where the company has by the payment waived the defense which it could perhaps have used if sued." 109 F.2d at 284.

In *John Hancock Mutual Life Insurance Co. v. Douglass*, 156 F.2d 367 (7th Cir.1946), the insured changed the beneficiary on the appropriate form, and the form was tendered to the insurer's agent for whatever action was necessary. The agent, however, returned the form to the insured's mother because the form was signed with the insured's initials instead of the full first name. The insured died suddenly before he was able to fill out a new form, but the court held that substantial compliance with policy provisions had been observed and a change of beneficiary was effected.

In *Schwerdtfeger v. American United Life Insurance Co.*, 165 F.2d 928 (6th Cir. 1948), the insured had his sister fill out a change of beneficiary form, naming his daughters as the new beneficiaries. He then signed it in the presence of the sister and his nurse. The application for change of beneficiary was not delivered to the insurance company until after the insured's death. The court weighed the testimony of the nurse and sister, and concluded that although the form had not been mailed in, as required by the insurance policy, there had been substantial compliance to give legal effect to intended change of beneficiary.

In *Connecticut General Life Insurance Co. v. Gulley*, 668 F.2d 325 (7th Cir.1982) cert. den. *Balsley v. Gulley*, 456 U.S. 974, 102 S.Ct. 2237, 72 L.Ed.2d 848, (1982), the insured properly executed a change of beneficiary form, but left the form with his daughter instead of forwarding the form to the insurance company. Although the policy called for the insured to file the change of beneficiary forms with the insurance office, and although insured had never instructed his daughter to mail the form for him, nor was there any indication that he intended that she do so, the court held that there had been substantial compliance with

the change of beneficiary requirements. In justification of its position, the court stated:

Although the final step of delivering the Change of Beneficiary form to the employer or directing that it be delivered did not occur, we find that there was substantial compliance with the terms of the insurance policy. this holding conforms to the general rule that "[w]here insured takes a positive action which evidences his obvious desire for a change of beneficiary, the courts will adopt such construction as will assist in carrying out such intention." *John Hancock Mutual Insurance Co. v. Douglass*, 156 F.2d 367, 369 (7th Cir.1946). 668 F.2d at 327–28.

In *Borgman v. Borgman*, 420 N.E.2d 1261 (Ind.App.1981), the insured originally named his father as the beneficiary, but with a subsequent marriage desired to change the beneficiary to his wife. The insurance agent told the insured that he had change of beneficiary forms which were required to make the change, but the insured stated that he wanted to speak with his fiance before effecting the change. After the insured's marriage, he met once again with the insurance agent and asked for the beneficiary change. However, the insurance agent proposed that the insured buy additional insurance. The court stated that "[t]he finder of fact may have reasonably found that Gene's [the insured's] attention was thus diverted from his expressed immediate intention to consideration of matters attendant to the agent's new proposals." 420 N.E.2d at 1265. Shortly after this meeting, the insured made several attempts to contact the insurance agent to complete the change of beneficiary forms. The change of beneficiary was not effectuated before the insured was killed in a car accident. However, the court found that while the intended change of beneficiary was frustrated, he had done all that could be reasonably expected and had substantially complied with insurance provisions for change of beneficiary.

In *State Employees' Retirement System v. Taylor*, 131 Ill.App.3d 997, 87 Ill.Dec. 47, 476 N.E.2d 749 (1985), the insured had writ-

ten a letter to the Employees' Retirement System to change beneficiaries. A written letter requesting change of beneficiary did not comply with the system's procedure; however, the court looked at the insured's intent to change beneficiaries and concluded that the actions of the insured constituted substantial compliance to effect a change. Further, the court recognized that there must be a combination of intent to make the change and positive action towards effecting that end.

In the instant action, the unique fact situation led the trial court to the conclusion that Timothy Groshong intended to change the beneficiary and took action which substantially complied with the procedures of the insurance company. There were two eye-witnesses that the change of beneficiary forms had been completed and signed. One of those eye-witnesses, Max Buffi, was employed as an agent of the insurance company. Mr. Groshong had further manifested his beneficial intent toward Joanne Groshong by changing beneficiaries on two other insurance policies in her favor.

In addition, Mr. Groshong had in the past relied upon his secretary to forward all change of beneficiary forms to the home office. By leaving those forms on his desk, the trial court could correctly find that he intended for his secretary to forward the forms. The secretary was not called as a witness to refute this assumption. The record reveals that Ruby Groshong, in some unexplained fashion, came into possession of documents, including Mr. Groshong's Will, which were on or in his desk at the time of his death. Therefore, even though the insured failed to mail the change of beneficiary forms to the insurance company as required by the policy, we hold that in the narrow confines of this fact situation, there is sufficient justification for the trial court's conclusion that a change of beneficiary had been effected through Mr. Groshong's substantial compliance with the agreement's procedural requirements.

*Affirmed.* Costs to respondent, no attorney fees awarded.

SHEPARD, C.J., and DONALDSON, J., concur.

BISTLINE, Justice, specially concurring.

This appeal is best decided by closely adhering to the basis of Judge Newhouse's written decision. It is not long and tedious, nor difficult of comprehension:

The court, after trial, finds and determines that the deceased properly executed the change of beneficiary forms, changing the beneficiary of the policies from Ruby Groshong to Joanne Groshong. This court is of the opinion that the evidence, and the stipulation of the parties shows an intention by the deceased to effectuate this change, plus his acts of execution carrying out his intention. Such is a substantial compliance sufficient to transfer the beneficiary. This court cannot help but note that the second wife is obviously the object of the deceased's bounty after the divorce and new marriage. R., p. 111.

Being unable to find in the Clerk's Record the stipulation which is mentioned, and not finding it among the exhibits, the only place to turn was to the Reporter's Transcript. Here, too, it is not listed as an Exhibit. But it is found therein where it was read into the record. First of all, there was a reference by Mr. Goss to a stipulation of facts which would be presented to the court, Tr., p. 1. In turn, there was a colloquy between counsel as to whether the stipulation would be marked as an exhibit, or filed. A suggestion was made that it would be filed with the court, which the court okayed. It was not filed with the clerk, however, or we would have it. Various exhibits were stipulated in, and Ruby Groshong's case rested. Joanne Groshong's case opened with the reading into evidence of a portion of the aforementioned stipulation, which portion was:

That Mr. Max Buffi, then an employee of the plaintiff witnessed Timothy p. Groshong execute change of beneficiary forms designed and approved by Investor's Diversified Services for the pur-

poses of changing the designation of beneficiaries in the IDS Marketing Corporation Manager's Retirement Plan and the Investor's Diversified Services Career Distributor's Retirement Plan.

These forms were signed by Mr. Groshong in his office on the 23rd day of June, 1983 and Max Buffi added his signature at the request of Mr. Groshong in order to signify that Mr. Buffi had officially witnessed Mr. Groshong's signature on each of the two forms.

In each case, the beneficiary designated by Mr. Groshong was his wife, JoAnne V. Groshong, one of the defendants herein. Mr. Groshong was not under the influence of any intoxicants or drugs at the time nor did he give any signs of executing these forms as a result of any duress or coercion. Tr., pp. 8–9.

That stipulation standing alone was a sufficient basis for the decision which Judge Newhouse reached. Those are stipulated facts. While it may have been the intention of Ruby's counsel to stipulate that Max Buffi would have so testified had he been present, the stipulation read into the record was not couched in such qualified language. At the same time, in the earlier colloquy counsel for Ruby Groshong initially had stated his intention to contact Buffi during the ensuing week "and just justify for my own conscience that he in fact did witness what he said he witnessed in the stipulation of facts. If I'm satisfied with that, we won't have anything further to do with Mr. Buffi. If I'm not, Mr. Lojek and I are agreed that I could take his deposition and we would submit that to the court for the court's review."

Only one conclusion can be drawn. The stipulation which later was read into the record, *supra,* was intended to be a stipulation of facts which would stand as such until counsel for Ruby passed judgment on credibility of Mr. Buffi, and unless counsel found him incredible, the stipulation remained intact and binding. It may to some seem unusual, but to my mind it was counsel's commendable display of reasonable respect for the witness. There is no empirical data which casts doubt on the ability of an attorney to assess another person's candor and honesty, just as judges are called upon to do.

On the other hand, Bakes, J., in dissent, refers to Max Buffi as JoAnne's friend. One might also speculate that he was a friend to all concerned, and merely knew what transpired, and told it, and was believed.

BAKES, Justice, dissenting:

In this interpleader action two spouses claimed beneficiary status under the late Timothy Groshong's retirement plans. Joanne Groshong (the decedent's widow) based her claim entirely upon an oral claim that shortly before his death the decedent had executed a change of beneficiary form in her favor. However, no change of beneficiary form was ever found. Ruby Groshong (the former wife) claimed to be the decedent's beneficiary based upon an earlier written designation of beneficiary form executed and filed with the insurance company by the deceased. The sole issue before this Court is whether there was substantial competent evidence that Timothy Groshong substantially complied with the contractual requirements for changing his named beneficiary under his IDS retirement plan. In addressing this issue, both the trial court and the majority opinion have failed to apply the proper evidentiary test as required by our prior cases. Therefore, I dissent.

The trial court issued a short one-page opinion, which failed to include any findings of fact or conclusions of law. If the trial court had made written conclusions of law it would have been evident that under Idaho case law the plaintiff was required to prove her claim by "clear and convincing" evidence and not merely by a preponderance. There is a long history of Idaho cases supporting the clear and convincing evidence requirement in situations where a party is seeking to overturn a written document with parol evidence. This Court's decision in *Lynch v. Cheney,* 98 Idaho 238, 243, 561 P.2d 380, 385 (1977), summarized the requirement as follows:

"While this Court has not previously addressed the question of what standard of proof is necessary to prove a claim of oral compromise of a judgment, we have required a clear and convincing, or a clear and satisfactory standard of proof in analogous circumstances such as the oral modification of a written contract, *Prairie Development Co., Ltd. v. Leiberg*, 15 Idaho 379, 98 P. 616 (1909) ('clear and satisfactory'), and an oral claim of ownership of real property contrary to title of record, *Ballard v. Lava Hot Springs Resort, Inc.*, 97 Idaho 572, 548 P.2d 72 (1976) ('clear, satisfactory and convincing'). The only case directly in point which the combined research of the Court and counsel was able to discover is *Howard v. Graybehl*, 16 Colo. App. 80, 63 P. 953 (1901), a suit to enforce a money judgment in which the judgment debtor's defense that the parties had orally agreed to a compromise of the claim was rejected by the Colorado Court of Appeals. That court observed: " 'A judgment is a very grave thing, and even in equity, which is the only jurisdiction having power to cancel judgments, which are solemn adjudication of record, it would not be vacated or set aside on parol testimony unless it is exceedingly clear, satisfactory, and convincing.' 63 P. at 955.

"The rationale for a 'clear and convincing' evidentiary standard rests in the value the law places on the integrity of a formal writing. Therefore, we adopt the standard of proof in the *Prairie Development Co.* and *Ballard* cases and hold that proof of an oral agreement to cancel a judgment debt must be established by clear and convincing evidence. The record supports the ruling of the trial court that the defendant Ross Cheney failed to meet that burden."

Additional cases later than *Lynch v. Cheney* applying the same rule are *M.K. Transport v. Grover*, 101 Idaho 345, 612 P.2d 1192 (1980); *Matter of Estate of Courtright v. Robertson*, 99 Idaho 575, 586 P.2d 265 (1978); *Collins v. Parkinson*, 98 Idaho 871, 574 P.2d 913 (1978). In this case, since the trial court made no findings of fact or conclusions of law, we have no way of knowing whether the court applied the clear and convincing evidence test dictated by our past cases. This situation alone should require at least a reversal and remand for reconsideration by the trial court applying the proper standard. *See Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986).

Although the majority has cited a number of cases in support of its holding, in all of the cited cases (which involve a change of beneficiary situation) the new or second change of beneficiary form was produced at trial. Production of an executed form provides direct evidence that the deceased had, in fact, intended to execute the change and can be considered clear and convincing evidence of this intent. Thus, the cases cited in the majority opinion meet the clear and convincing evidentiary standard, and the only question at issue in those cases was whether there was actual delivery or an intent to deliver. My research has failed to locate any cases which have upheld an oral claim of change of beneficiary where no written form was introduced into evidence. The majority opinion allows, for the first time, oral proof of change of beneficiary to overturn an existing written beneficiary form and ignores a strong line of Idaho case law which protects, to a reasonable degree, the sanctity of such written documents.

The retirement plan contract between the deceased Timothy Groshong and his employer IDS specifically provided that in the event of the death of the employee Groshong the benefits remaining in the retirement plan would be paid to the beneficiary designated in writing and filed with IDS. In this case, the signed beneficiary designation on file with IDS listed the former wife, Ruby Groshong, as the beneficiary. The retirement plan contract further required that any change of beneficiary be in writing and delivered to the company. No written change of beneficiary executed by the deceased Timothy Groshong was ever produced by Joanne Groshong (the present wife). The only evidence attacking Ruby Groshong's claim (which is based on the

original designation of beneficiary form on file with IDS) was the self serving testimony of Joanne Groshong, the decedent's new wife of approximately two weeks, and the deposition testimony of her long time friend, Max Buffi, both of whom testified that they saw the decedent execute the change of beneficiary form. The alleged change of beneficiary form was supposedly left by Timothy Groshong on his desk, and there was evidence that in the ordinary course his secretary would have processed and mailed it. However, the change of beneficiary form was never processed and delivered to the insurance company. The statement in the majority opinion that "Ruby Groshong, in some unexplained fashion, came into possession of documents, including Mr. Groshong's will, which were on or in his desk at the time of his death," does not accurately reflect the evidence in the record. Joanne Groshong (the decedent's wife at the time of his death) herself testified that after his death Mr. Groshong's desk was cleaned out by his boss, Mr. Eben Dobson, and Polly Anderson, his secretary. She then testified that ultimately those documents ended up in the hands of Ruby Groshong, but she had no idea how they got there. That is the evidence in the record, and it explains how the former wife Ruby Groshong obtained the documents. The additional statement in the majority opinion that "Mr. Groshong never again returned to his office" is not supported by the record. He did not leave town for his fishing trip for approximately two days after he supposedly executed the new change of beneficiary form, and during that time he could have gone to the office and destroyed the form.

Reviewing the record, it is clear that even if the trial court had applied the proper standard of proof as a matter of law the evidence was far short of what should be required to meet the "clear and convincing" test. This Court ruled in *Russ Ballard & F.A.I. v. Lava Hot Springs Resort, Inc.*, 97 Idaho 572, 548 P.2d 72 (1976), that where the trial court failed to apply the "clear and convincing" evidence test this Court can evaluate the evidence and, if that evidence is insufficient, reverse the trial court on appeal as a matter of law. As was the case in *Ballard*, the evidence produced at trial here was not clear and convincing, and therefore this Court should reverse the trial court as a matter of law.

I believe that this matter should either (1) be reversed and remanded to the trial court for an application of the "clear and convincing" evidence test to the facts produced at trial, or (2) this Court should merely do what was done in the *Ballard* case and reverse the trial court as a matter of law because of an insufficiency of the evidence.